E-FILED
Tuesday, 01 November, 2011 05:09:35 PM
Clerk, U.S. District Court, ILCD

| | | |
|---|---|---|
| **STATE OF ILLINOIS** | ) | *Sanders v. CMS* |
| | ) ss. | **United States District Court, Central** |
| **COUNTY OF SANGAMON** | ) | **District of Illinois case number:  09-3207** |

## <u>AFFIDAVIT</u>

I, Victor Puckett, having first been duly sworn upon oath, state that I have personal knowledge of the facts set forth herein, that I am competent to testify and if called to testify would state as follows:

1.    I am employed as a Data Processing Supervisor III for the Illinois Department of Central Management Services (CMS).  In this capacity, among other things, I monitor computer programs that process a variety of information for State agencies.  In addition, I supervise Data Processing Technicians, Data Processing Specialists, and Data Processing Administrative Specialists in the Input Unit.

2.    I have been employed as a Data Processing Supervisor III for CMS since approximately 2003.

3.    I began data processing work for the State in October, 1985.

4.    I became the immediate supervisor of Michael Sanders when he began work at the Department of Human Services in 2005.

5.    The next supervisor in Michael Sanders' chain of command was Dennis Phipps until his retirement, and then Jim Davis upon Dennis Phipps' retirement. Dennis Phipps was employed as a Public Service Administrator of the computer room where Michael Sanders reported to work.  After Dennis Phipps retired, Jim Davis was employed, on a temporary job assignment, as a Public Service Administrator of the computer room where Michael Sanders reported to work.

6.    The next supervisor in Michael Sanders' chain of command was Deb Cowan.  When Deb Cowan was out on medical leave, Steve Miller acted in her supervisory role.  Deb Cowan was employed as a Senior Public Service Administrator.



EXHIBIT

D

Steve Miller was employed as a Public Service Administrator for the Production Control Unit.

7.      The next supervisor in Michael Sanders' chain of command was Steven Petrilli. Steven Petrilli was employed as a the Operations Manager over the Network Services Unit, the computer room where Michael Sanders was employed, and the Production Control Unit.

8.      On February 10, 2005, I sent the email attached as Exhibit 1 to my subordinate staff, including Michael Sanders.

9.      On February 10, 2005, I received the email attached in Exhibit 2 from Michael Sanders. I responded to the email on February 11, 2005, which is contained within Exhibit 2.

10.     On March 9, 2005, I sent the email attached as Exhibit 3 to Michael Sanders.

11.     On June 10, 2005, I sent the email attached in Exhibit 4 to Michael Sanders. I sent the email to Michael Sanders because he provided the wrong type of cart to allow a program to continue processing. A cart operates like a disc, which provides space to allow the program to continue processing. I received an email response from Michael Sanders on June 11, 2005, which is also contained within Exhibit 4.

12.     On June 24, 2005, I sent the email attached in Exhibit 5 to Michael Sanders. I received an email response from Michael Sanders on June 24, 2005, which is also contained within Exhibit 5.

13.     On June 30, 2005, I sent the email attached in Exhibit 6 to Michael Sanders. I received an email response from Michael Sanders on July 2, 2005, which is also contained within Exhibit 6.

14.    On August 9, 2005, I sent the email attached in Exhibit 7 to Michael Sanders. I received an email response from Michael Sanders on August 9, 2005, which is also contained within Exhibit 7.

15.    I completed a report regarding an incident between me and Michael Sanders which occurred on August 26, 2005. I submitted a copy of the report to my supervisors. A copy of the report is attached as Exhibit 8.

AFFIANT FURTHER SAYTH NOT

                                                s/Victor Puckett

                                                VICTOR PUCKETT

SUBSCRIBED and SWORN to before me
this _1st_ day of November, 2011.

   s/Michelle O. Brown
Notary Public

OFFICIAL SEAL
MICHELLE O. BROWN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES  12-13-2014

3



**VICTOR PUCKETT**
**<DHS084R1.DHSOP37@SSW>**

05/17/2005 04:38 PM

To   Debra Stout/SOB/CMS/ILL@ILL

cc

bcc

Subject   Fwd: INFORMATION

****************************
****************************
****************************
THIS IS THE ONE I'VE BEEN LOOKING FOR

>>> VICTOR PUCKETT 02/10/05 4:45 PM >>>
I/O input area!
        When the shift starts at 1600hrs (4:00pm) it is your responsibility to be
in your work area.    If after the shift starts and it is needed that you  be
somewhere other than your work area, you must inform your immediate supervisor
or any supervisor in the area, that you will be away from your work area for
reasons of (?).
        This is a heads-up notice, each of us will take the time to do this.  If
I am asked where you are or when you left or when you will be back, I better
know this.  I cannot account for your whereabouts if I am not notified where
you are.  Please, do not put me in a position to answer questions of your
whereabouts when I had or have no idea!
        It is a violation of work rules to leave your designated work area for
any reason unless you have spoken to a supervisor (preferable your immediate
supervisor), in the absence of the next supervisor in the area is fine.
        Also as a reminder, time off other than sick or personal needs to be
pre-scheduled two days in advance, it allows for coverage in your absence this
way, and once again it is a work rule noted.  In cases of emergencies there is
room for leverage provided up to that point the guidelines set are followed.
Repeated abuse or unexplained last minute requests for time off other than
stated will be handled accordingly.
        This is intended for ensuring that you have all been told, or notified
of this info.  From now on, let someone know if you need to be away from your
work area and what time you expect to be back, when you take a break or lunch
as well.  Thanks, and have a great day!

EXHIBIT

**1**

: 02587

MICHAEL SANDERS - Re: SECURITY GUARD  Page 1

**From:**  VICTOR PUCKETT
**To:**  MICHAEL SANDERS
**Date:**  2/11/05 4:53PM
**Subject:**  Re: SECURITY GUARD

Mike,

    I see that you have finally e-mailed your concerns to Dennis and I, I will forward this up to the next level as well as Dennis I am sure. However I just wanted to comment on some of your written concerns to you.

    I know for a fact that the loading dock, in the Harris building IS NOT A I/O Control work area! This area of the building is used by I/O staff, but it in no way is a I/O Control Input designated area for work purposes. The whole building accesses this area for other reasons unknown- garbage, paper, pick-ups, drop offs, etc.

    Another helpful hint, is to realize and understand that there have been a lot of different occurrences with you, concerning your time, and how you requested it, where you take off after your shift starts, unaccounted time away from your work area, a few of these concerns could well have been avoided. Like arriving to work and disappearing for 12 minutes after the shift starts. No one knew where you were, and I was asked were you were. Then I was told, your shift begins at 4 and you need to be here. If not you are to state to someone where you need to go, and when you will be back etc. I immediately informed you of this and you stated well I was in the building. The building covers a lot of ground. Your work area is I/O control. Just for the record. No I cannot explain the guard situation that is not my puppy, It will be addressed by others beyond me. However, it is easy to avoid situations like this. Don't wonder off of the path, no one is allowed other than supervisors to be in anyone's work area, for any reason. Hallways, bathrooms, lunch rooms, smoke rooms, vendings etc. are all accessed by hallways. Other offices are off limits. A severe problem could occur being somewhere other than your designated areas. Just a little more positive peer culture for ya. You have a chance to be brand new, by transferring to another state location. Lets make the best of it!

>> MICHAEL SANDERS 02/10/05 11:21PM >>>
Dennis and Victor,

I wanted to relay an incident that I had with a building security guard on February 8, 2005. This incident occurred over my lunch period.

When my lunch period began I went to the cafeteria on the third floor. During my lunch period the janitorial staff began to buff the floor of the cafeteria. I found the noise to be a distraction, therefore, I decided to go to the dock area of IO to finish my lunch.

A building security guard entered the dock area of IO while I was there. This building security guard was accompanied by several janitorial staff. The building security guard then conveyed the following to me:

A) That I was not authorized to be in the dock area of IO.

B) That I had triggered an alarm by being in the dock area of IO.

C) That he had witnessed me, on the video surveillance system, place papers underneath my shirt.

The building security guard then informed me that, because of what he had witnessed on the video surveillance system, it was necessary for me to raise my coat so that he could pat down my chest and waist area. I complied with the building security guard.

The building security guard then patted down my chest and waist area. This pat down forced the building security guard to admit that I had nothing hidden underneath my shirt. The building security guard then ordered me out of the dock area of IO.

**EXHIBIT**

**2**

tabbies

: 01900

MICHAEL SANDERS - Re: SECURITY GUARD                                    Page 2

I immediately returned to IO to speak with supervisory staff. Upon my return to IO.........I found the building security guard at the window speaking with Dennis Phipps. I informed Dennis Phipps of what had occurred when his conversation with the building security guard had ended.

I understand the need for building security, however, I feel a necessity to report this incident. I feel that, as an IO employee, the dock area is a part of my authorized work area. If this assumption is correct then I would like for the building security guard to be immediately informed that the dock area is a part of my authorized work area.   If this assumption is incorrect then I would like to be immediately informed that the dock area is not a part of authorized work area.

Secondly, I believe it incorrect for building security to engage in pat downs of employees without 1st getting approval of management. If my assumption is correct then I would like for building security to be immediately informed of this fact. If my assumption is incorrect then I would like be immediately informed that I am incorrect. Acts of this nature leave employees with the impression that they are being treated like common criminals in their place of employment.

This purpose of this E-mail is to ensure that incidents of this nature do not repeat themselves. I would like feedback regarding this matter.

Thank You

Michael Sanders

CC:        Debby Cowan;  DENNIS PHIPPS;  Steve Miller;  STEVE PETRILLI

: 01901

**MICHAEL SANDERS** - job duties                                                                                   Page 1

**From:**      VICTOR PUCKETT
**To:**        MICHAEL SANDERS
**Date:**      3/9/05 9:04PM
**Subject:**   job duties

Mike,

    Today Wednesday 03-09-05 you left your work area for your lunch period. As you know when you or anyone else on the input section go to lunch, the area is covered until you arrive back from lunch. We know this, right!

    I picked up the schedules to keep them up for you while you were gone, and I had found that (7) seven jobs were not circled as running, and marked off as completed prior to your leaving for lunch. The job names are listed here, and should have been circled (to be aware of their running in the system) or marked off (meaning they have completed). As each job listed or mentioned had completed before you left for your lunch!

**    **     The first job found was DHSROCSD this job is listed on the paper schedule for execution, and had executed at 1659hrs,hrs today (4:59pm). Job was never circled, meaning you were not aware of its execution at all. Was not marked off of the paper schedule either, meaning the job had completed but you were unaware of this as well.

    JOBS :   DMHST02- NOT CIRCLED, NOT MARKED OFF AFTER COMPLETING AT 7:45PM
            DHSM053A-  not circled, not marked off, and completed at 7:40 pm
            DMHTK01 -  not circled, not marked off, and completed at  7:41pm
          DMHTR01A-  not circled,  not marked off, and completed at 7:49 pm
         IVRSTARD-  not circled, not marked off, and completed at 7:10pm
         IVRSTAR2 -  not circled, not marked off, and completed at 7:12pm.

    You are wasting time, creating your own flow chart, use these paper schedules/flow charts provided and keep them up. There is no way these should have been unattended while you are station with these two schedules (IVR+DMH). Part of our job monitoring schedules is just that, we need to know immediately when these jobs are completed, abended, or looping etc. If either one of these jobs had abended, you would not have let me or the jcl person for the night know about them. You have to keep them up, and if you walk out for a smoke or bathroom etc, the schedules you are assigned to for the night are to be kept up.

    Do not create or waste the evening with your own desired flow chart, or paper schedule, stick to the schedules or flow charts provided only. No need to overlook anymore jobs ever!! Also, no need to monitor any PUBLIC AID jobs, you do not work for them anymore, watch the jobs you are suppose to watch and stay off of the IDPA jobs.

    This letter to you, is to inform you, with no mistakes about it. Of your neglect to fulfill your duties assigned for this evening. It will be filed for reference purposes only at this time. If you need assistance with monitoring your schedules or do not understand them, any questions get a hold of me immediately. I cannot have untouched jobs running, and then no recollection of their run or the outcome of their runs, anymore!

**CC:**         Debby Cowan;  DENNIS PHIPPS;  VICTOR PUCKETT



EXHIBIT
**3**

SandersInitialDisclosures00186

**From:**        STEVE PETRILLI
**To:**          MICHAEL SANDERS
**Date:**        6/13/05 8:59AM
**Subject:**     Re: PROCEDURES.

Michael,

Mr. Miller is a part of the management chain of command in the MIS Bureau of Operations Services and for the I/O Control Section. You were advised of such when you asked for it during the meeting on 6/3/05.

>>> MICHAEL SANDERS 6/11/2005 6:39 PM >>>
Victor,

When you sent me this E-mail you CC'd a copy of it to Steve Miller. Steve Miller is not a part of my Chain of Command and I do not believe that you should be sending information regarding me to him. I would appreciate it if you would refrain from doing this in the future.

I am quite surprised that you did not notice the job waiting for a private during the one hour you mentioned. I provided the private during the time that you were at lunch so, as you are aware, there was no supervisor on hand. From the tone of your E-Mail, it almost seems to me that you would prefer that no action be taken by staff on anything until you return from your lunch. This does not sound like we are "all on the same team".

Before adding the private, I called BCCS to verify the correct cart type to be inserted into the job. BCCS personnel informed me that the job was in fact calling for a 3490 "H" cart. Instead of waiting another hour for you to return form lunch I had the cart added. That information was then added to the 3490 "H" cart list.

It seems to me that every opportunity you receive to comment on my performance is transformed into a criticism and circulated through this Chain of Command. Since you sent this E-Mail on the same day that the cart was added you must have been aware that the cart was added. You could have simply added that information to your shift report and considered this matter closed. Instead you choose to engage in another attack upon my professionalism.

Perhaps you don't understand my concern. I do not need E-Mail's from you regarding "petty" matters such as this. If you care to take a look at your "Y" cart list you will notice various comments in the different columns. Have you sent and E-Mail's to everyone that has typed something into the "Y" cart list that you don't think is appropriate.........or do you just single out me!! The relevance of the complaints you make about e typically, in my opinion, seems to be trivial and mundane.

I would appreciate it if you would take more time to consider the relevance of your E-Mails before you send them to me.

Have a Great Day!!

>>> VICTOR PUCKETT 6/10/05 9:56 PM >>>
Mike,
After you left last Friday with your two hours of Holiday time. I grabbed the schedules to pick up where you left off. It was noticed that a job DHSMHPBC had called for a private for well over an hour. You provide a cart that began with the letter H, to follow a Y cart. In so doing, I should have been informed of this action by you and was not. I need this information for the shift report, and any jobs that have fixes applied to them. You decide the action you believe should be given, explain it to me and I will decide if anything more should be done or something less. Please do not attempt fixes without FIRST contacting a immediate supervisor on hand. If you take action during a break period or lunch period, inform the supervisor of the

**EXHIBIT**

**4**

SandersInitialDisclosures00195

procedure implemented so we may all be aware of it, and so it may be placed into the shift report as needed. Also a quick reminder, when fixing jobs, the abend log must be completed about the job at hand, no matter what the job name is, all jobs have to be entered into the abend log for each occurrence. Per Jim Davis, and I. Appreciate the time, a couple of things to help out with is all. We are all on the same team, and we all need to pass on needed information as required by the supervisors on hand!!! ALWAYS!! Have a great day!


CC:       Debby Cowan; Debra Stout; JIM DAVIS; Steve Miller; VICTOR PUCKETT

SandersInitialDisclosures00196

**From:**      MICHAEL SANDERS
**To:**        PUCKETT, VICTOR
**Date:**      06/24/2005 9:26:13 PM
**Subject:**   RE: input section

Victor,

Can you explain why this E-MAIL is sent to only me and not to other input section personell. As I am sure you know there are two staff in the input section today. Both staff took lunch at the same time and returned at the same time. Your E-MAIL, however, is only addressed to me. Can you tell me why? Does your policy apply equally to everyone or is your policy only for me?

It seems to me that you are again singling me out for special treatment. Also, since you saw me leaving and you were returning from your break I am quite certain that you came in and provided phone coverage. Was it really necessary for you to send this E-MAIL through the chain of command?

It appears to me that your behavior could be described as racist in that you have again singled me out and sent this E-MAIL through the entire chain of command.

--------

**From:** VICTOR PUCKETT
**Sent:** Friday, June 24, 2005 8:50 PM
**To:**   MICHAEL SANDERS
**Cc:**   Debby Cowan; JIM DAVIS; Steve Miller
**Subject:**     input section

   Mike,
   If you are the only person up front on the input section, for any reason. You must wait until someone returns from the restroom, break, or lunch before walking out. I was returning from my break, and you had walked out of the building for your lunch. I asked you, if anyone was up front in I/O, you said I don't think so. I specifically stated you must not leave the area unattended. I also asked Rod Carmen, if you had mentioned to him you were leaving for lunch. You did not.
   There must always be a body available for phones, messages, abends, scheduling etc. No excuses for not having someone on the section for coverage. As it is, your normal time you leave for lunch, is 8pm, I understand that, 2 minutes after 8pm I was returning at this time. You must still wait for a returned body for coverage. Do not leave the input section alone if you are here by yourself temporarily. If you need to leave, you must inform someone, anyone available. Or wait until someone returns.
    You have been asked before to let someone know of your leaving for lunch, or breaks etc. I do not understand this incident. All of us, tell someone where we are going, you need to do this as well, ALWAYS!! It is our policy, to always have coverage. Stick to it, so there are no more incidents like this again.

**CC:**          PETRILLI, STEVE;'DHSOP36@dhs.state.il.us';'DHSPA3N@dhs.state.il.us'



EXHIBIT
5

: 00910

## Unknown

**From:**     MICHAEL SANDERS
**Sent:**     Saturday, July 02, 2005 5:01 PM
**To:**       PUCKETT, VICTOR
**Cc:**        STOUT, DEBRA;PETRILLI, STEVE;DAVIS, JIM;Cowan, Debby;Lebshier, Jayme
**Subject:**  RE: jcl

Victor,

On 6/29/05 8 abends occured on 2nd shift. These abends were corrected by me and noted in your shift report so that the neccesary JCL corrections could be made. You were informed of every action that I took.

On 06/30/05 17 abends occured on 2nd shift that were corrected by me and noted in your shift report so that the necessary JCL corrections could be made. You were informed of every action that I took.

On 06/30/05 I noticed that many of the necessary JCL corrections for the 6/29/05 abends had not been made to the programs. This would have caused the total number of abends for 06/30/05 to be over 20. I corrected the JCL prior to these programs running. This caused the total number of 2nd shift abends for 06/30/05 to not number above 20. I informed you of my actions and you noted these actions in your shift report.

Predictably, you now seek to complain about fictional polices and procedures. It is evident to me that no action that I take can be properly acknowleged by you. I believe that your failure to properly acknowledge my work is due to little more than your acute racism and bigotry. In my opinion You have developed some type of fetish with this African American employee that you need to address with higher management. The directions that you provide are little more that subterfuge to disguise your racial fetish and increase the amount of work that I would have to perform.

Perhaps, the distinction between slaves and subordinate employees is not clear to you. I suggest that you seek mental health counseling on obtaining a better understanding of the differences between the two and on how to properly work with your employees.  You are to interpret this as saying that I believe that you are in need of mental health treatment.

Michael Sanders

**From:**     VICTOR PUCKETT
**Sent:**     Thursday, June 30, 2005 9:04 PM
**To:**       MICHAEL SANDERS
**Cc:**        Debby Cowan; JIM DAVIS
**Subject:**  jcl

Mike,
        In the future, DO NOT fix any jobs that have not abended or blown off.  Unless a job abends, do not go into them and apply changes before their runs unless directed to do so by a supervisor.  It is not our job to change things in jobs when we arrive to work. Fix when abended only.  Also, do not make changes unless you have conversed with a supervisor.  I believe I asked you this a month ago.
        Mike overall decent working skills, however, we have to follow our guides.  It is production controls job and the programmers jobs to apply the necessary changes.  We during the course of their runs, will fix jobs as they abend.  So avoid jumping into jobs and making any changes without first consulting a supervisor or admin specialist in their absence on down the line.  I would appreciate it.

217 422 5450

FW 227

I W to R WT

**EXHIBIT**
**6**

Page 1

SandersInitialDisclosures00112

From:        MICHAEL SANDERS
To:          Cowan, Debby;DAVIS, JIM
Date:        8/13/2005 5:04:37 PM
Subject:     FW: chain of command


---

From:  MICHAEL SANDERS
Sent:  Tuesday, August 09, 2005 6:10 PM
To:    PUCKETT, VICTOR
Cc:    'DHSOP36@dhs.state.il.us';'DHSPA3N@dhs.state.il.us'
Subject:      RE: chain of command

Victor,


The Network Services unit of this agency is for all agency employees.  Since I am an employee of this agency I feel quite comfortable going to nework services  alone on work related issues.

I DO NOT NEED YOU TO INTERFERE IN THE MY COMMUINICATION WITH OTHER UNITS OF THIS AGENCY WHEN LEGITIMATE WORK RELATED REASONS EXIST FOR THAT COMUNICATION.

Michael


---

From:  VICTOR PUCKETT
Sent:  Tuesday, August 09, 2005 6:02 PM
To:    MICHAEL SANDERS
Cc:    Debby Cowan; JIM DAVIS
Subject:      chain of command

        Mike,
    Just to make you aware of necessary procedures.  In the future, do not bypass Jim Davis your PSA , or myself your immediate supervisor DPSIII.  I've seen you on a couple of occasions, going to network services for pc help etc.  You need to come to me your immediate supvisor, or Jim Davis in my absence, explain the problem.  Then we will contact Network Services if it concerns job related (not personal) materials for performing your duties.  This is a direction to take.  So in the future, contact me or jim first. Dan who works for Network Services, should not be showing up on Saturdays to try to get you better access to anyting unless it is work releated.  If you encounter problems with your pc, let  Jim or I know, we will get you fixed up.  Don't bypass us, we are here for you.

EXHIBIT

7

SandersInitialDisclosures00233

To: Debby Cowan SPSA, Jim Davis PSA
From: Victor Puckett DPSIII
Date: 08/26/05
Time: 2200hrs (10pm)
Subject: Intimidation

On this Friday night, a job had abended DHS83008 with its normal U3696. Procedures to fix this abend are given in the step50 Instructions. I returned from Lunch, the abend had already occurred. Mike Sanders was in the middle of fixing this job on his own. During at which point I had the past two Saturdays instructed him to fix a simple jcl-error and rerun a couple of jobs in scheduler. Today he acted on his own, as I arrived; I began to monitor his performance. In doing so, the job was resubmitted before mentioned to me. Receiving a jcl-error. I looked into the changes Mike made to the job. Found that Mike was adjusting the changes needed to his way for a fix. Meaning, Mike instead of placing a (0) where it should be and get the job going. Went into the =3.4 directly locating the data set needed, and provided the goovoo number.
Never the less, I explained to Mike that I would take over from here. As there were line inserts as well. So Mike took off for lunch. I fixed the job, reran accordingly. The update completed for us.

Mike Sanders returns from lunch. So I explained a few scheduling details to him. Then began to speak about the 83008 update fix he applied. In a very productive manner, I spoke to Mike. I stated the reason there are these instructions provided, is because that is the way the programmer want it done. Mike over and over stated "My way would have worked, if you would have just let me change something". I explained that I cannot afford to have numerous attempts being made to fix a job, that has explicit instructions. Mike said to me " I don't understand you guys over here". Also " There is nothing wrong with someone getting jcl-errors while trying to fix a job". My explanation to Mike for understanding my point, was that I " do not want to answer to programmers complaining that we did not fix their jobs the way they had instructed us to, with the instructions provided". Mike stated " it works either way, why not let me do it my way". I again tried to persuade Mike that there is only one way we will do it in I/O. The way the programmers instruct us to. So again I said Mike, there is a difference of one . character being keyed, as to numerous characters being keyed. One key there is no chance for a mis-key of a data set name. At that point, Mike said "You go over there and talk, cause I am not listening to you anymore". I said, Mike work with me here, I said this is important if you are going to be doing jcl-corrections, you need to follow the given instructions, verbal or written. I also said that " were have numerous items to follow, on call procedure have to be followed exactly the way it is written. Mike again said " Go over there and talk I am not hearing you". So I said Mike, in reality you are not to begin working on any jcl-corrections unless Jim ok's it first. I said I have written a letter to him. For exact instructions with this. At that point, Mike slid his chair over to where I was leaning/sitting on the table two terminals away from him. He slid his chair towards me, with one leg on one side of mine, and the other leg on the other side of mine while he was sitting in his chair. At that point Mike leaned upward towards my face close to six inches and said I am done talking to you. I at that point stated Mike back away from my face, he stated "or what". I then said "back away from my face or you will be removed from the

EXHIBIT
tabbies
8

: 02789

building. Mike said to me "you will not remove me". I said for the third time Mike back away from my face or you will be removed from the building. Again, he sat there in the same position glaring into my eyes. I placed my other foot down, he then back away just a little bit. I then looked up Steve Petrilli's number and gave him a call. Steve spoke with the other employee working on the unit with Mike Sanders and I. Chris Lael, I gave Chris the phone and asked him to step outside of the area to speak. I was instructed after the conversation to write a statement about what happened. This is my statement.

PS: Mr. Mike Sanders aggression towards me was very confrontational. To approach anyone that close to another's face is intimidating, and threatening. After being asked to back way from my face not once, or twice but three times, and being told that on the second and third time he would be removed from the building. Is a close call situation. Not only would I have had to stand up and basically be on top of him getting to my feet, I would have had to go up and over his feet and legs to be physically away from him. To close for comfort.

s/ Victor Puckett

271

1            BEFORE THE CIVIL SERVICE COMMISSION

2                    STATE OF ILLINOIS

3
IN RE:                          )
4  ILLINOIS DEPARTMENT OF        )
   CENTRAL MANAGEMENT            )
5  SERVICES,                     )        COPY
                                 )
6            Petitioner,         )
                                 )
7       vs.                      )   Case No. DA-11-08
                                 )
8  MICHAEL SANDERS,              )
                                 )
9            Respondent.         )

10       Continued Hearing held on February 28, 2008,

11  at the Offices of the Illinois Civil Service

12  Commission, 400 West Monroe, Suite 306,

13  Springfield, Illinois, scheduled for the hour of

14  10:00 a.m.

15

16

17  PRESENT:

18       MR. ANDREW BARRIS,
              Administrative Law Judge
19
         DONNA M. DODD, CSR
20

21
              GOLEMBECK REPORTING SERVICE
22            Connie S. Golembeck, Owner
                    (217) 523-8244
23                  (217) 632-8244

24

EXHIBIT
E

300

1  something that I'm trying to get across to you that

2  seems to be getting lost somewhere in the mix.

3  BY MS. ROMANO:

4      Q.   So not to get hyper technical but, and I

5  know you're trying to keep us from getting into an

6  over technical discussion on software, but what was

7  it that he thought you were doing wrong and what

8  was it you thought you were doing right

9  specifically?

10      A.   I wrote something in long form and he

11  comes back and says, you shouldn't write it in long

12  form.  You should write it in short form.  The last

13  time we were here, January 23rd, I gave an example.

14  It's more or less like I wrote the word doctor out.

15  He comes by and says, don't write doctor.  You

16  write Dr.

17              The software accepts it either way you

18  input it.  The software will allow you to do it.

19  His entire argument was redundant and ignorant.

20  And, again, like I said, the software is what

21  determines whether or not it's done correctly,

22  because if it's not done correctly, the software

23  will fail.  What we were arguing about, again, to

24  make a long story really short, I wrote something

312

1    fine.  We'll take a break.

2                    (Whereupon there was a recess

3                    taken.)

4        ADMINISTRATIVE LAW JUDGE BARRIS:  All

5    right.  Go ahead.

6        MS. ROMANO:  The committee has agreed on

7    one more question.

8        ADMINISTRATIVE LAW JUDGE BARRIS:  Okay.

9    Go ahead.

10   BY MS. ROMANO:

11       Q.  One more question about this incident with

12   Victor Puckett.

13                    Even if you disagreed on what he was

14   telling you to do, why didn't you just do it?

15       A.  Because I think that on a scale of one to

16   ten, what he was saying, the importance ranks at

17   about a one.

18                    This is another example I'll give you,

19   you know, just for purposes of an example.  It's

20   about the same thing as somebody telling you that

21   when you take notes, that you should use your left

22   hand instead of using your right hand.  You're

23   right-handed, and how would you feel about it if

24   you had a supervisor that told you not to take

000488

313

1   notes with your right hand anymore, but to use your

2   left hand.

3       Q.   So you didn't think what he was telling

4   you was very important, is that a correct way to

5   summarize?

6       A.   He gets involved in the minutia of what,

7   you know, what I do during the course of doing my

8   job.  I don't think that he, that his direction is

9   needed there.

10              The same thing as, you know, being

11  written up or suspended because you are right

12  handed and you could have somebody come up and tell

13  you to start taking notes with your left hand

14  instead of using your right hand, and that's how I

15  view it.

16      Q.   So it wasn't important enough for you to

17  follow his direction?

18      A.   I think it was irrelevant what he was

19  talking about.  And then, on the other hand, again,

20  you know, when you go back and you consider the

21  fact that we're dealing with software, he is not

22  the person that determines whether or not something

23  is done correctly and neither am I.

24              The software determines whether or not

000489

390

1    STATE OF ILLINOIS    )

2                         )

3    COUNTY OF SANGAMON )

4                  C E R T I F I C A T E

5        I, DONNA M. DODD, a Certified Shorthand

6    Reporter and Notary Public, in and for said County

7    and State, do hereby certify that I reported in

8    shorthand the proceedings had on the hearing of the

9    above-entitled cause on February 28, 2008, and that

10   the foregoing is a true and correct transcript of

11   my shorthand notes so taken.

12        Given under my hand and seal this 10th

13   day of March, A.D., 2008.

14

15

16

17   _____  s/Donna M. Dodd

18                         Certified Shorthand Reporter

19                         and Notary Public

20                         CSR # 084-003912

21                         ╔══════════════════════╗
                           "OFFICIAL SEAL"
22                         Donna M. Dodd
                           Notary Public, State of Illinois
                           My Commission Exp. 05/19/2010
23   My commission expires  ╚══════════════════════╝

24   May 19, 2010.

                                        000566

BEFORE THE CIVIL SERVICE COMMISSION, STATE OF ILLINOIS

ILLINOIS DEPARTMENT OF )
CENTRAL MANAGEMENT SERVICES, )
)
                    Petitioner, )
                                     )     CASE NO. DA-25-06
        vs.                          )
                                     )
MICHAEL SANDERS                      )
                                     )
                    Respondent.      )

## FINDINGS AND DECISION OF THE COMMISSION

IT IS THE FINDING OF THE COMMISSION THAT ON JANUARY 20, 2006 THE PETITIONER FILED A MOTION TO DISMISS AND WITHDRAW CHARGES PENDING AGAINST RESPONDENT AND TO DISMISS THE PENDING MATTER AS THE RESPONDENT WAS BEING REINSTATED EFFECTIVE FEBRUARY 1, 2006.  IN ACCORDANCE THEREWITH, THE ADMINISTRATIVE LAW JUDGE DISMISSED THE APPEAL ON JANUARY 23, 2006.  THE UNDERSIGNED APPROVE AND ADOPT THE DISMISSAL OF THE APPEAL.  THIS IS A FINAL ADMINISTRATIVE ORDER SUBJECT TO THE ADMINISTRATIVE REVIEW ACT.


s/ Chris Kolker                          s/ George E. Richards
_____          _____
Chris Kolker, Chairman                   George E. Richards, Commissioner
s/ Barbara J. Peterson                   s/ Raymond W. Ewell
_____          _____
Barbara J. Peterson, Commissioner        Raymond W. Ewell, Commissioner
s/ Betty Bukraba
_____
Betty Bukraba, Commissioner


ENTERED THIS 16TH DAY
OF FEBRUARY 2006.



EXHIBIT

F

CIVIL SERVICE COMMISSION, STATE OF ILLINOIS

STATE OF ILLINOIS      )
                             ) SS.

COUNTY OF SANGAMON   )

     I, Beckie Daniken, Executive Secretary III, Civil Service Commission, State of Illinois, and as such keeper of the records of said Commission, do hereby certify that the following is a true, perfect, and complete copy of the FINDING AND DECISION OF THE COMMISSION REGARDING APPEAL DA-25-06, ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, PETITIONER v. MICHAEL A. SANDERS, RESPONDENT, as the same appears from the records and files of said Commission.

     IN TESTIMONY WHEREOF, I have hereunto set my hand at Springfield, Illinois, on October 27, 2011.

s/ Beckie Daniken

Beckie Daniken, Executive Secretary III

**IN THE CIRCUIT COURT**
**FOR THE SEVENTH JUDICIAL CIRCUIT**
**SPRINGFIELD, SANGAMON COUNTY, ILLINOIS**

| | | |
|---|---|---|
| ILLINOIS DEPARTMENT OF CENTRAL<br>MANAGEMENT SERVICES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2008-MR- 000551 |
| | ) | |
| THE ILLINOIS CIVIL SERVICE COMMISSION;<br>CHRIS KOLKER, in his official capacity as<br>Chairman of the Illinois Civil Service Commission;<br>RAYMOND W. EWELL, in his official as<br>Commissioner of the Illinois Civil Service<br>Commission; BARBARA J. PETERSON, in her<br>official capacity as Commissioner of the Illinois<br>Civil Service Commission; ARES G. DALIANIS, in<br>his official capacity as Commissioner of the Illinois<br>Civil Service Commission; BETTY BUKRABA, in<br>her official capacity as Commissioner of the Illinois<br>Civil Service Commissioner; and<br>MICHAEL SANDERS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

**FILED**

OCT 3 0 2008   CIV.-9

*[signature]*  Clerk of the
Circuit Court

## ORDER

THIS CAUSE comes before the Court on Plaintiff's Motion to Stay Administrative Decision,

Plaintiff, ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, represented by

Assistant Attorney General Amy Petry Romano and Defendants ILLINOIS CIVIL SERVICE

COMMISSION and the individually named members of the ILLINOIS CIVIL SERVICE

COMMISSION, represented by Assistant Attorney General James R. Rammelkamp and Defendant,

MICHAEL SANDERS represented by counsel Bradley B. Wilson, and the Court being fully advised

in the premises and having considered the

    A.    The arguments of counsel;

    B.    All briefs, and arguments contained therein, submitted by the parties;

    C.    Applicable law.



EXHIBIT
G
tabbies

**THE COURT FINDS AS FOLLOWS:**

1.  For the purposes of the Motion to Stay Administrative Decision, the Plaintiff has not established a reasonable likelihood of prevailing on the merits of its Petition for Administrative Review;

2.  The Plaintiffs have established that enforcing that portion of the Administrative Order which requires the payment of back-pay to Mr. Sanders for the period of time he was off work due to his discharge raises the possibility of additional litigation. Specifically, the Court finds that, should Plaintiff ultimately prevail on the merits of its Petition for Administrative Review, there exists the potential that Plaintiffs would have to initiate collection proceedings to recoup any back-pay which would be provided to Mr. Sanders at the present time.

**WHEREFORE, IT IS ORDERED THAT:**

A.  Plaintiff's Motion to Stay Administrative Order is **GRANTED IN PART and DENIED IN PART**.

B.  Plaintiff's Motion to Stay Administrative Order is **DENIED** to the extent that the Administrative Order requires Defendant Michael Sanders' reinstatement to a same or similar position he held with the Illinois Department of Central Management Services prior to his discharge by Plaintiff. As Mr. Sanders was on paid administrative leave prior to his discharge, Plaintiff shall return him to that status. Mr. Sanders' reinstatement shall be effective as of October 28, 2008, the date of this hearing. Plaintiff shall immediately make the appropriate offices and agencies aware of Mr. Sanders' reinstatement and ensure that Mr. Sanders is placed on the Department of Central Management Services' payroll. The Department of Central Management Services shall take all measures necessary to ensure that Mr. Sanders receives compensation for the payroll period scheduled to be disbursed on November 22, 2008.

C.  Plaintiff's Motion to Stay Administrative Order is **GRANTED** to the extent that the Administrative Order presently imposes upon the Department of Central Management Services an obligation to reimburse Mr. Sanders the amount of lost wages he incurred as a result of his discharge. This Order is, in no way, meant to diminish Mr. Sanders' statutory right to receive reimbursement for his lost wages should Defendants prevail on the merits of Plaintiff's Petition for Administrative Review.

_10/20/08_
Date Entered

s/ Patrick Kelley

Judge Patrick Kelley

2



I hereby certify the document to which this
certificate is attached is a true and
complete copy of this original on file and of
record in my office.

Date: ___10/27/2011___

s/ Anthony P. Libri

ANTHONY P. LIBRI, JR.
Clerk of the Circuit Court in the
State of Illinois and County of Sangamon

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
SANGAMON COUNTY

ILLINOIS DEPARTMENT OF CENTRAL        )
MANAGEMENT SERVICES,                  )
                                      )
          Plaintiff,                  )
                                      )
     -vs-                             )        No. 08-MR-551
                                      )
THE ILLINOIS CIVIL SERVICE            )
COMMISSION; CHRIS KOLKER, in his official )
capacity as Chairman of the Illinois Civil Service )
Commission; RAYMOND W. EWELL, in his  )
official capacity as Commissioner of the Illinois )
Civil Service Commission; BARBARA J.  )
 PETERSON, in her official capacity as )
Commissioner of the Illinois Civil Service )
Commission; ARES G. DALIANIS, in his official )
capacity as Commissioner of the Illinois Civil )
Service Commission; BETTY BUKRABA, in her )
official capacity as Commissioner of the Illinois )
Civil Service Commission; and MICHAEL )
SANDERS,                              )
                                      )
          Defendants.                 )

*FILED*

FEB 2 4 2009   CIV-4

*[signature]* Clerk of the
Circuit Court

## ORDER

THIS CAUSE comes before the Court on Plaintiff's Complaint for Administrative Review.

Plaintiff, the ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, represented

by Illinois Attorney General Lisa Madigan, through Assistant Attorney General Amy Petry Romano;

and Defendants, the ILLINOIS CIVIL SERVICE COMMISSION and the individually-named

members of the ILLINOIS CIVIL SERVICE COMMISSION, represented by Illinois Attorney

General Lisa Madigan, through Assistant Attorney General Jacob Smith; and Defendant, MICHAEL

SANDERS, represented by counsel Bradley B. Wilson, and the Court, being fully advised in the

premises, and having considered the following:

-1-



EXHIBIT
**H**



A.      Arguments of counsel,

B.      All briefs and arguments contained therein submitted by the parties,

C.      Applicable law, and

D.      The administrative Record

**THE COURT FINDS AS FOLLOWS:**

1.      The Civil Service Commission's finding that the written charges for discharge were not

proven is not clearly erroneous.

**WHEREFORE, IT IS ORDERED THAT:**

A.      The administrative decision of the State of Illinois Civil Service Commission is <u>AFFIRMED</u>.


2- 24 -09
_____
Date Entered

s/ Patrick Kelley
_____
Judge Patrick Kelley

-2-



I hereby certify the document to which this certificate is attached is a true and complete copy of this original on file and of record in my office.

Date: _____ 10/27/2011 CMC_____

/s/ Anthony P. Libri

ANTHONY P. LIBRI, JR.
Clerk of the Circuit Court in the
State of Illinois and County of Sangamon