## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MICHAEL A. SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-3207 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CENTRAL MANAGEMENT | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendant | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Motion for Partial Summary Judgment[1] (d/e 52) filed pro se by Plaintiff Michael Sanders, the Motion for Summary Judgment filed by Defendant Illinois Department of Central Management Services (d/e 53), and Defendant's Motion to Strike Portions of Plaintiff's Objection (d/e 68).

In his Complaint, Plaintiff alleged Defendant violated §

---

[1] Plaintiff filed a Motion to Bar Defendant From Arguing Certain Defenses (d/e 52).  On November 10, 2011, Magistrate Judge Byron G. Cudmore interpreted the Motion as a Motion for Partial Summary Judgment.  See d/e 59.

12112(d)(4)(A) of the Americans with Disabilities Act (42 U.S.C. §

12112(d)(4)(A)) (ADA) by requiring him to submit to a psychological

independent medical examination (IME), disciplining him for refusing to

submit to the IME, and discharging him for refusing to submit to the

IME.  In the Defendant's Motion for Summary Judgment, Defendant

asserts that its decision to require Plaintiff to attend the IME was job-

related and consistent with business necessity.

In Plaintiff's response to the Motion for Summary Judgment, he

argues that Defendant maintains a work environment that is racially

hostile and "rife with acts of illegal retaliation and discriminatory conduct

directed toward individuals with certain types of disabilities."  This

response triggered the filing of Defendant's Motion to Strike.  Plaintiff

has also filed a Motion for Partial Summary Judgment, asserting that the

Illinois Civil Service Commission's (Commission) decision should operate

as either res judicata or collateral estoppel to bar Defendant from arguing

that Defendant directed Plaintiff to undergo the IMEs for the purpose of

determining whether he (1) was able to perform the essential functions of

his job or (2) posed a threat to the safety of others in the workplace.

For the reasons that follow, Defendant's Motion to Strike is GRANTED  and both Motions for Summary Judgment are DENIED.

## I.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Plaintiff asserted claims based on federal law.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").  Venue is proper because the events giving rise to the claim occurred within the judicial district of this Court.  See 28 U.S.C. § 1391(b)(2) (a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>see</u> <u>also</u>,

Fed.R.Civ.P. 56(c).  A moving party must show that no reasonable fact-

finder could return a verdict for the non-moving party.  <u>See</u> <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986); <u>Gleason v. Mesirow Fin.,</u>

<u>Inc.</u>, 118 F.3d 1134, 1139 (7th Cir. 1997).

    The movant bears the burden of establishing that there is no

genuine issue of material fact.  <u>Celotex Corp</u>, 477 U.S. at 323.  If the

movant meets this burden, the non-movant must set forth specific facts

demonstrating that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e);

<u>Anderson</u>, 477 U.S. at 252.

    In deciding a motion for summary judgment, a court can only

consider sworn statements based on personal knowledge and other

evidence that would be admissible at trial under the Federal Rules of

Evidence.  <u>Stinnett v. Iron Works Gym/Executive Health Spa, Inc.</u>, 301

F.3d 610, 613 (7th Cir. 2002).  The evidence is viewed in the light most

favorable to the non-movant and "all justifiable inferences are to be

drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.

Summary judgment is inappropriate when alternate inferences can be drawn from the evidence, as the choice between reasonable inferences from facts is a jury function. <u>Id.</u>  However, conclusory allegations do not create issues of fact which forestall summary judgment.  <u>See</u> <u>Sublett v. John Wiley & Sons, Inc.</u>, 463 F.3d 731, 740 (7th Cir. 2006) ("it is . . . axiomatic that a plaintiff's conclusory statements do not create an issue of fact").

## III.  FACTS

Initially, this Court notes that Local Rule 7.1(D), which sets forth specific requirements for litigants to follow for summary judgment motions and responses, does not apply to pro se litigants such as Plaintiff.  <u>See</u> Local Rule 7.1(D)(6).  However, Plaintiff did respond to Defendant's statement of undisputed facts.  Therefore, this Court will take into consideration Plaintiff's responses to the statement of undisputed facts when examining the facts of the case.

### A.    Plaintiff's Employment with Defendant

Plaintiff began working for the State of Illinois in 1993.  In 2000, Plaintiff was employed with the Illinois Department of Public Aid as a data processing technician.  In February 2005, Plaintiff became employed with the Illinois Department of Human Services as a data processing technician.  Victor Puckett was Plaintiff's immediate supervisor.

On March 16, 2005, Defendant's Bureau of Communications and Computer Services assumed management of data processing for all State agencies.  Due to the consolidation of data processing within the Defendant, Plaintiff became an employee of Defendant.

Plaintiff remained employed as a data processing technician after the consolidation.  Plaintiff worked second-shift in the Input Unit of Input/Output Control.  His duties included monitoring computer programs and correcting the programs if they failed to run correctly.

On February 10, 2005, Puckett sent an email to the Input Unit, including Plaintiff, that directed employees to inform their immediate supervisor if they needed to leave their work area.  On February 11, 2005, Puckett sent an email to Plaintiff directing Plaintiff to refrain from

entering unauthorized areas at work and directing Plaintiff to refrain

from leaving his work area without notifying his supervisor.  On March 9,

2005, Puckett sent an email to Plaintiff directing Plaintiff to stop

attempting to fix a program malfunction with his own flow chart and to

only fix a program with flow charts that had been provided.

On June 8, 2005, Plaintiff received a one-day suspension for being

absent from his work area without notifying his supervisor and for being

in a restricted area of the workplace.  While Plaintiff does not dispute

that factual statement, Plaintiff asserts that the allegations are unrelated

to the charges contained in his Notice of Discharge and are, along with

the other evidence of incidents between Plaintiff and Puckett, evidence of

harassment by Puckett.

On June 10, 2005, Puckett sent Plaintiff an email advising Plaintiff

that Plaintiff incorrectly performed a work-related task.  Puckett advised

Plaintiff that an immediate supervisor should be notified prior to Plaintiff

attempting to fix a programing error.  Plaintiff responded, by email, that

Puckett's email was "petty" and complained that Puckett's complaints

were "trivial and mundane."  Plaintiff also wrote that he "would

appreciate it if you would take more time to consider the relevance of

your E-Mails before you send them to me."

On June 24, 2005, Puckett sent Plaintiff an email advising Plaintiff

not to leave his work area if no one else was present.  In his July 2, 2005

email response, Plaintiff asserted:

> I believe that your failure to properly acknowledge
> my work is due to little more than your acute
> racism and bigotry.  In my opinion [y]ou have
> developed some type of fetish with this African
> American employee that you need to address with
> higher management.  The directions that you
> provided are little more that [sic] subterfuge to
> disguise your racial fetish and increase the amount
> of work that I would have to perform.
>
> Perhaps, the distinction between slaves and
> subordinate employees is not clear to you.  I
> suggest that you seek mental health counseling on
> obtaining a better understanding of the differences
> between the two and on how to properly work
> with your employees.  You are to interpret this as
> saying that I believe that you are in need of mental
> health treatment.

On August 10, 2005, Plaintiff received a three-day suspension.

Defendant asserts the suspension was for (1) Plaintiff's July 2, 2005

email to Puckett; (2) leaving work early without obtaining approval to take benefit time on June 25, 2005; and (3) an incident on June 30, 2005 when Plaintiff was talking on the telephone to a programmer and became irate at his supervisor when his supervisor asked to speak to the programmer.  Plaintiff, however, disputes these facts, but only on the basis that the allegations are unrelated to the charges in his Notice of Discharge.  Plaintiff also asserts the suspension is evidence that Defendant harassed Plaintiff.

On August 9, 2005, Puckett sent an email to Plaintiff telling him to go to his supervisors for assistance on work-related tasks, not other individuals in the agency.  Plaintiff responded, by email, that he did not need Puckett interfering with Plaintiff's communications with other units of the agency for legitimate work-related reasons.

### B.    The August 26, 2005 and September 9, 2005 Incidents

On August 26, 2005, a software program Plaintiff was monitoring shut down.  Plaintiff disputes Defendant's allegations that Plaintiff did not follow Department instructions for restarting the program.  A

discussion ensued between Plaintiff and Puckett, although the parties dispute the nature of the discussion.  Plaintiff asserts, in an affidavit, that Puckett nearly assaulted him.  In his testimony before the Administrative Law Judge (ALJ) of the Civil Service Commission (Commission), Plaintiff testified that Puckett was leaning over him, screaming, cussing, and threatening to throw Plaintiff out of the building.  The next day, Plaintiff called the Illinois State Police, who came to the workplace but did not talk to Puckett.

In response to Defendant's Motion for Summary Judgment, Plaintiff asserts that Puckett changed his story about the August 26 incident.  In support of that assertion, Plaintiff points to Puckett's August 27, 2005 email to Steve Petrilli (cc'd to Debby Cowan and Jim Davis, individuals Defendant claims were in Plaintiff's chain of command), which stated, in part, as follows:

> I spoke with you on the phone.  Apparently
> [Plaintiff] has called the police.  The police arrived
> to the building to speak with [Plaintiff]. [Plaintiff]
> was overheard by a guard (Art Drone) that he
> wanted to give a statement, but to the Illinois
> State Police.  The city officers left.

> Art Drone the guard told me and Don Denning
> the Admin[.] Specialist for the output section, that
> he over[]heard [Plaintiff] saying that either he is
> going to leave tonight or I am, sorta thumbing
> towards me.  No biggy, no one has been touched
> and nothing said, but [Plaintiff] wants to give a
> statement to them for some reason.

However, in two statements addressed to the same individuals, one dated
August 25 and the other dated August 26 (Plaintiff claims the emails are
backdated), Puckett wrote that he felt intimidated and threatened by
Plaintiff during the August 26, 2005 incident.

Plaintiff faced discipline as a result of the August 26, 2005 incident.
On September 9, 2005, at the pre-disciplinary hearing, Plaintiff  was
represented by Jayme Carter Lebshier, his union representative.  Before
the hearing was over, Plaintiff announced he had had enough and left.
Lebshier left the meeting to join Plaintiff.  Plaintiff and Lebshier had a
discussion.  Plaintiff admits he was upset.

Lebshier gave Plaintiff's supervisory staff a written report regarding
her conversation with Plaintiff after Plaintiff left the pre-disciplinary
hearing.  Plaintiff disputes, however, Defendant's assertion that Lebshier

notified Plaintiff's supervisory staff that Plaintiff had threatened to harm
Puckett.   Plaintiff asserts that Lebshier's written report indicates that
Plaintiff intended to call the State Police if Puckett harassed him again.
Defendant placed Plaintiff on paid administrative leave.

C.    **Plaintiff's Refusal to Attend Independent Medical Evaluation
      and Subsequent Discharge**

Thereafter, Defendant ordered Plaintiff to submit to a psychological
independent medical evaluation (IME) with Dr. Terry Killian.  Each time
Defendant scheduled an IME for Plaintiff–October 5, 2005, October 12,
2005, and November 23, 2005–Plaintiff failed to attend.

On November 23, 2005, Defendant discharged Plaintiff,
purportedly for failure to attend the IMEs.  On February 1, 2006,
however, Defendant voluntarily rescinded Plaintiff's discharge and
reimbursed Plaintiff for back wages between November 23, 2005 and
February 1, 2006.  Upon reinstatement, Plaintiff was immediately placed
on paid administrative leave.

In early April, Defendant scheduled Plaintiff for an IME on April
19, 2006.  Again, Plaintiff did not attend.

On January 4, 2007, the Office of Executive Inspector General (OEIG) completed its investigation of the August 26, 2005 incident (which was initiated in August 2005).  The investigation concluded that "the allegation that [Plaintiff] violated proscriptions against violence in the workplace by making threats against his supervisor is UNFOUNDED i.e. there was insufficient evidence to establish that a violation occurred."

On January 19, 2007, Defendant scheduled Plaintiff for an IME on January 30, 2007.  In May 2007, Defendant scheduled an IME for Plaintiff for June 13, 2007.  Plaintiff did not attend either appointment.

On August 1, 2007, Plaintiff's administrative leave ended.  Plaintiff served a 30-day suspension between August 1 and August 30, 2007.  Defendant asserts that the 30-day suspension was for insubordination for failing to attend the June 13, 2007 IME.  However, Plaintiff disputes this allegation, asserting that the suspension was for his refusal "to submit to a psychiatric evaluation which Defendant ordered without cause and which illegally removed provisions of Doctor/Patient confidentiality." After completion of his suspension, Plaintiff was placed back on

administrative leave.

At the end of August 2007, Defendant scheduled Plaintiff for an IME on September 5, 2007.  Plaintiff again did not attend.  Prior to the September 5, 2007 appointment, Plaintiff delivered two memoranda to Dr. Killian, threatening legal action, disciplinary action, and threatening to contact the media if Dr. Killian refused to cancel the IME.

On October 5, 2007, Plaintiff was placed on suspension pending discharge.  Defendant asserts Plaintiff was suspended pending discharge for insubordination for failing to attend the IME on September 5, 2007.  Plaintiff disputes this, asserting he was suspended pending discharge for refusing "to submit to a psychiatric examination which Defendant ordered without cause and which illegally removed provisions of Doctor/Patient confidentiality."

On October 17, 2007, Plaintiff was discharged.  The Notice of Discharge provided that Plaintiff was being discharged for insubordination by disobedience, misuse of State working time, and conduct unbecoming a CMS employee, all of which were based on the

failure to attend the scheduled IME on September 5, 2007.

### D.   The ALJ Found Defendant Failed to Prove Cause for Discharge, the Commission Concurred, and that Decision Was Upheld on Administrative Review

Plaintiff appealed his termination to the Illinois Civil Service Commission.  The caption lists Defendant as Petitioner and Plaintiff as Respondent.

In August 2008, after several days of hearings, the ALJ made the recommended finding that the written charges for discharge had not been proven because Defendant was not reasonable in ordering Plaintiff to attend the IME scheduled on September 5, 2007.  In reaching that conclusion, the ALJ considered the history of the relationship between Plaintiff and Puckett, including the August 26, 2005 and September 9, 2005 incidents.

The ALJ found Plaintiff did not harm or threaten to harm Puckett or any of Plaintiff's coworkers on either August 26, 2005 or September 9, 2005.  The ALJ found Plaintiff's testimony regarding the August 26, 2005 incident credible and, "for the most part, supported by Chris Lael, a

credible and unbiased witness." ALJ Decision p. 24. Puckett did not

testify. The ALJ further found that Plaintiff did not threaten to harm

Puckett during his September 9, 2005 conversation with Lebshier.

Instead, Plaintiff only threatened to call the police if Puckett "confronted

him in the same manner as before." ALJ Decision, p. 24. The ALJ

specifically found Lebshier's testimony was not credible. In addition, the

ALJ concluded that Defendant was not reasonable in ordering the IME

because no one from Defendant's management had talked to Plaintiff

about his version of events of the August 26, 2005 or September 9, 2005

incidents.

The ALJ also found that "no explicit rule or policy" gave Defendant

the authority to order Plaintiff to attend an IME. While noting that

Defendant argued, citing <u>Sullivan v. River Valley School District</u>, 197

F.3d 804 (6th Cir. 1999), that the ADA authorized Defendant to order

the medical examination, the ALJ found the ADA was not at issue

because Plaintiff did not allege that Defendant had discriminated against

him. The ALJ also noted, however, that while the ADA cases cited by the

parties "can be distinguished from the present situation, they do offer

some guidance regarding the parameters of an agency's authority to order

an IME." ALJ Decision, p. 26.  The ALJ concluded that, in any event,

the <u>Sullivan</u> court held that an "'employer's discretion to order employees

to undergo examinations is hardly unbounded.'" ALJ Decision, p. 18.

On August 21, 2008, the Commission, in a 3-2 decision, adopted

the ALJ's decision.  The Commission found that the written charges for

discharge had not been proven because Defendant was not reasonable in

ordering Plaintiff to attend the IME scheduled September 5, 2007.

Specifically, the Commission noted that in the absence of a specific

department or personnel rule detailing the authority of Defendant to

order an employee to attend an IME without consent, Defendant was not

reasonable in so ordering Plaintiff because there was (1) no credible

evidence Plaintiff physically threatened anyone and (2) no evidence

Defendant investigated the events.

In September 2008, Defendant sought administrative review and

filed a Motion to Stay Administrative Decision.  In October 2008, the

circuit court denied the Motion to Stay and directed Defendant to reinstate Plaintiff effective October 28, 2008.  Plaintiff disputes that he was reinstated to employment with Defendant and reimbursed for back wages from October 5 to October 17, 2007.  Plaintiff asserts that he did not receive $10,236 in back pay because his attorney requested a continuance during the proceedings before the Commission.

In the brief in opposition to the administrative decision, Defendant argued it had established cause for discharging Plaintiff because Defendant acted in a reasonable manner when it demanded Plaintiff attend an IME.  In February 2009, the circuit court affirmed the Commission's administrative decision.

### E.    Plaintiff Files Americans With Disabilities Act Claim

In August 2009, Plaintiff filed his Complaint in this Court[2].  In the Complaint, Plaintiff alleged Defendant subjected him to treatment

---

[2] Plaintiff was represented by counsel when he filed his Complaint.  In October 2010, counsel withdrew and Plaintiff has proceeded pro se.

contrary to his rights under 42 U.S.C. § 12112(d)(4)(A) when Plaintiff: (1) "was required to submit to an independent medical examination to determine if he was disabled or the nature and severity of his disability when such examination was not job-related and consistent with business necessity"; (2) disciplined "for refusing to submit to an independent medical evaluation"; and (3) discharged from his employment "for refusing to submit to an independent medical evaluation."  Complaint (d/e 1), ¶ 25.  Plaintiff sought declaratory relief, monetary damages for economic losses and personal injuries, and exemplary damages.

## IV. ANALYSIS

As noted, Plaintiff brought this action pursuant to § 12112(d)(4)(A) of the ADA.  Section 12112(d)(4)(A) of the ADA provides as follows:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

See also Coffman v. Indianapolis Fire Dep't, 578 F.3d 559, 565 (7th Cir. 2009) (noting that the ADA "allows inquiries 'into the ability of an employee to perform job-related functions'") (quoting 42 U.S.C. § 12112(d)(4)(B)).

Although not addressed by the parties, some courts have held that a nondisabled plaintiff can sue for violations of § 12112(d).  See, e.g., Fredenburg v. Contra Costa Cnty. Dep't of Health Serv., 172 F.3d 1176, 1181 (9th Cir. 1999) (finding that the plaintiff did not have to be a "'qualified individual with a disability' in order to have standing to invoke the ADA's protection against improper medical examinations"); Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1229 (10th Cir. 1997).  The Seventh Circuit has not decided this issue. See O'Neal v. City of New Albany, 293 F.3d 998, 1007 (7th Cir. 2002) (in a case involving a job applicant, the court noted "We have not yet addressed the question of whether a nondisabled plaintiff can sue for violations of [§ 12112(d)]"); but see Murdock v. Washington, 193 F.3d 510, 512 (7th Cir. 1999) (noting that Title I of the ADA has a "section

limiting medical testing for disabilities, <u>see</u> § 12112(d)(2)-(4) [that]  does

not require that an individual be disabled to state a claim" but finding it

did not apply to the plaintiff because the plaintiff was a prison inmate,

not an employee or job applicant).  At least one court in this district has

addressed a § 12112(d) claim by examining whether the ordered medical

examination was discriminatory.  <u>See</u>, <u>e.g.</u> <u>Miller v. Champaign Cmty.</u>

<u>Unit Sch. Dist.</u>, 983 F. Supp. 1201, 1206 (C.D. Ill. 1997) (finding that

because the medical examination was job-related and consistent with

business necessity, the medical examination was not the result of

discrimination).

　　　In this case, the parties agree that the issue is whether the ordered

IME was job-related and consistent with business necessity.  <u>See</u>

Plaintiff's Memorandum in support of partial summary judgment (d/e

52-1); Defendant's Memorandum in Support of Summary Judgment (d/e

54).  Therefore, this Court will not address whether Plaintiff is a

"qualified individual with a disability" but will only consider whether a

genuine issue of material fact remains whether Defendant's demand that

Plaintiff undergo the IME was job-related and consistent with business necessity.

## A.    Plaintiff's Motion for Partial Summary Judgment is Denied

In his Motion for Partial Summary Judgment, Plaintiff essentially argues that the Commission's decision should operate as either res judicata or estoppel to bar Defendant from arguing that Defendant directed Plaintiff to undergo the IMEs for the purpose of determining whether he (1) was able to perform the essential functions of his job or (2) posed a threat to the safety of others in the workplace.  According to Plaintiff, Defendant is bound by its argument before the Commission that Defendant ordered the IMEs because of workplace safety, which was rejected by the Commission.  Defendant argues neither doctrine applies to bar Defendant's defense.

Pursuant to 28 U.S.C. § 1738, a federal court must give the "same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982).  Illinois law

gives preclusive effect to a state court judgment affirming an

administrative decision, as well as the administrative decision itself, so

long as there is no discrepancy between them.  See Kendall v. C.F. Indus.,

Inc., 624 F.Supp. 1102, 1104 (N.D. Ill. 1986); Osborne v. Kelly, 207 Ill.

App. 3d 488, 491 (1991); but see Univ. of Tenn. v. Elliott, 478 U.S.

788, 794 (1986) (noting that § 1738 is not applicable to "unreviewed

state administrative factfinding" in Title VII);  Staats v. Cnty. of Sawyer,

220 F.3d 511, 514 (7th Cir. 2000) (extending Elliott and holding that an

unreviewed state administrative proceeding would not have preclusive

effect on an ADA claim).

In Illinois, "[t]he doctrine of res judicata provides that a final

judgment rendered by a court of competent jurisdiction on the merits is

conclusive as to the rights of the parties and their privies, and, as to

them, constitutes an absolute bar to a subsequent action involving the

same claim, demand or cause of action."  Nowak v. St. Rita High Sch.,

197 Ill. 2d 381, 389 (2001) (noting that res judicata bars not only claims

raised but claims that could have been raised).  In contrast, collateral

estoppel "applies when a party . . . participates in two separate and
consecutive cases arising on different causes of actions and some
controlling fact or question material to the determination of both causes
has been adjudicated against that party in the former suit by a court of
competent jurisdiction." Id. at 389-90; see also Rekhi v. Wildwood
Indus., Inc., 61 F.3d 1313, 1317 (7th Cir. 1995) (noting that collateral
estoppel is "[t]he doctrine that limits the relitigation of an issue in a
subsequent suit").

Here, Plaintiff is attempting to limit relitigation of an issue.
Therefore, collateral estoppel is the appropriate doctrine to consider.
See, e.g., Kendall, 624 F. Supp. at 1104 (examining collateral estoppel
because the two actions involved a different claim and a different party);
see also Godare v. Sterling Steel Casting Co., 103 Ill. App. 3d 46, 50
(1981) (examining collateral estoppel, as opposed to res judicata, where
the plaintiff argued that the defendant was estopped from arguing that
the plaintiff was totally and permanently disabled with regard the
pension plan where, in an earlier proceeding, the Industrial Commission

had found the plaintiff totally and permanently disabled for purposes of worker's compensation).

Collateral estoppel applies where: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." Gumma v. White, 216 Ill. 2d 23, 38 (2005). In addition, the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue. See Altman v. Dep't of Children and Family Servs., 666 F. Supp. 2d 918, 928 (S. D. Ill. 2009) (applying Illinois law; also noting that offense collateral estoppel–when the plaintiff seeks to bar the defendant from litigating an issue the defendant has previously litigated unsuccessfully–is not favored under Illinois law).

Defendant argues collateral estoppel does not apply because: (1) Plaintiff has failed to establish an identity of issue; and (2) applying collateral estoppel here would be unfair because Plaintiff did not raise his

ADA claim until after the Commission entered its ruling, Plaintiff (as the respondent in the Commission proceedings) did not raise the ADA as a defense before the Commission, and the Commission specifically found the ADA did not apply as controlling precedent. This Court agrees with Defendant on both grounds.

Specifically, the issues in the two proceedings are not identical. In the Commission, the ALJ determined that Defendant did not have cause to discharge Plaintiff because the demand that Plaintiff undergo an IME was not reasonable, appearing to apply a subjective analysis. In contrast here, Plaintiff claims Defendant violated the ADA by ordering him to attend an IME. The ADA prohibits such examinations unless the examination is job-related and consistent with business necessity. Moreover, the ALJ appeared to apply a subjective test, and the ADA test is an objective one. See Jackson v. Lake Cnty., 2003 WL 22127743, at *10 (N.D. Ill. 2003) (citing cases). Because different standards applied in the two proceedings, the issues are not identical. See Demski v. Mundelein Police Pension Bd., 358 Ill. App. 3d 499, 502-03 (2005)

(finding that determination by the Illinois Industrial Commission  that

the plaintiff's accident arose out of and in the course of her employment

was not the identical issue as was raised in the subsequent case–whether

the accident occurred during an act of duty).  Godare, 103 Ill. App. 3d at

51  (finding the issues were not identical because "[d]ifferent standards

and procedures are utilized by workermen's compensation and the

pension agreement to determine disability").

Moreover, applying collateral estoppel here would be unfair to

Defendant because Defendant was denied the opportunity to argue

before the Commission that the examination was job-related and

consistent with business necessity.   Kendall, 624 F. Supp. at 1105

(explaining that Illinois does not apply collateral estoppel where the

result would be unjust to the party against whom it is a asserted).  The

ALJ specifically noted that the ADA did not apply because Plaintiff had

not raised an ADA claim.  See Jones v. City of Alton, 757 F.2d 878 (7th

Cir. 1985) (refusing to apply res judicata or collateral estoppel where the

plaintiff was prevented from presenting evidence on his theory);

<u>Radaszewski v. Metro. Water Reclamation Dist. of Greater Chicago</u>,

1998 WL 386358, at *4 (N.D. Ill. 1998) (finding collateral estoppel did

not apply where the plaintiff did not raise, and could not have raised, the

ADA claim in the administrative proceedings and resolution of the ADA

claims was clearly not essential to the administrative agency's decision).

To bar Defendant from raising that defense now, after being denied the

opportunity to raise that defense below, would be unfair.

### B.    Defendant's Motion to Strike Portions of Plaintiff's Response is Granted

Defendant moves to strike portions of Plaintiff's Response to

Defendant's Motion for Summary Judgment on the basis that Plaintiff

attempts to add new claims not found in his Complaint.  Notably,

Defendant does not argue that Plaintiff's claim exceeds the scope of the

EEOC charge and, in fact,  the record does not contain a copy of the

EEOC charge.  <u>See</u>, <u>e.g.</u>, <u>Tomao v. Abbott Labs., Inc.</u>, 2007 WL

2225905, at *6 (N.D. Ill. 2007) (noting that a plaintiff suing under the

ADA must file a charge with the EEOC and, in a subsequent suit in

federal court, "may only bring those claims that were included in the

original charge, that are like or reasonably related to the allegations of the charge, or that grow out of the charge"). Instead, Defendant argues that Plaintiff is now claiming that Defendant retaliated and/or discriminated against him by: (1) accusing Plaintiff of making a bomb threat to his work site on February 26, 2009; (2) initiating disciplinary proceedings against him upon his return to work after reinstatement; (3) subjecting Plaintiff to a layoff; (4) approving a discharge against Plaintiff on November 23, 2010; (5) requiring Plaintiff to attend an IME after he complained about racial conduct; and (6) allowing Steve Miller to supervise him. Plaintiff has not filed a response.

A plaintiff need not set forth specific facts or legal theories in his complaint. <u>See</u> Fed. R. Civ. P. 8; <u>Nance v. Vieregge</u>, 147 F.3d 589, 590 (7th Cir. 1998). However, a complaint must adequately "inform the opposing party of the grounds upon which a claim rests[.]" <u>Conner v. Ill. Dep't of Natural Res.</u>, 413 F.3d 675, 679 (7th Cir. 2005). Moreover, "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." <u>Shanahan v.</u>

<u>City of Chicago</u>, 82 F.3d 776, 781 (7th Cir. 1996).

Here, Plaintiff's Complaint clearly alleges Defendant violated the ADA by requiring that he undergo an IME, disciplining Plaintiff for refusing to attend the IME, and discharging Plaintiff for refusing to attend the IME.  The Complaint contains no allegations of racial discrimination or other forms of disability discrimination or retaliation. <u>Evans v. McDonald's Corp.</u>, 936 F.2d 1087, 1090 (10th Cir. 1991) (refusing to allow the plaintiff to change her theory from failure to retain to failure to hire two weeks before trial in response to the defendant's motion for summary judgment).  To the extent Plaintiff is seeking leave to amend the Complaint to add such claims, that request is denied as untimely and, with regard to the racial claims, futile for failure to exhaust administrative remedies.  <u>See</u>, <u>e.g.</u>, <u>Shanahan</u>, 82 F.3d at 778 (finding the district court did not abuse its discretion by denying the plaintiff leave to amend where discovery had been closed for over a year and amendment would have been futile).  Therefore, Defendant's Motion to Strike is granted.

## C.   Defendant's Motion for Summary Judgment is Denied

Defendant argues it is entitled to summary judgment on Plaintiff's claim that Defendant violated the ADA by requiring Plaintiff to attend a psychiatric IME and then subjecting Plaintiff to discipline for his failure to attend.  Defendant asserts that the IME sought was job-related and consistent with business necessity.  See 42 U.S.C. § 12112(d)(4)(A) (prohibiting medical examinations and medical inquiries of an employee "as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity").

The requirement that the IME ordered by Defendant be job-related and consistent with business necessity is an objective one.  See Jackson 2003 WL 22127743, at *10.  A demand that an employee undergo a medical examination may be job-related and consistent with business necessity when the employer has a reasonable belief, based on objective evidence, that the plaintiff''s ability to perform essential job functions

was impaired by a medical condition or the employee will pose a direct threat due to a medical condition.  See Varley v. Highlands Sch. Dist., 2007 WL 3020449, at *9 (W.D. Pa. 2007) (citing "Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the ADA, 2000 WL 33407181 (July 27, 2000) (Part A, question 5)"; see also Sullivan, 197 F.3d at 811 (providing that there must be "significant evidence that could cause a reasonable person to inquire as to whether an employee is still capable of performing his job").

Defendant bears the burden of demonstrating business necessity. Brownfield v. City of Yakima, 612 F.3d 1140, 1146 (9th Cir. 2010). "[T]he business necessity standard "is quite high, and is not to be confused with mere expediency."  Id., quoting Cripe v. City of San Jose, 261 F.3d 877, 890 (9th Cir. 2001) (quotations and alteration omitted). Moreover, "what constitutes a business necessity will undoubtedly vary in different workplaces."  Conroy v. N.Y. State Dep't of Corr. Servs. , 333 F.3d 88, 99 (2d Cir. 2003).

This Court notes that getting along with coworkers is "an essential

function of all but the most solitary jobs[.]"  French v. Fronteer

Directory, Inc., 1998 WL 1780683, at *3 (D.N.D. 1998) (citing cases).

Moreover, the Seventh Circuit has held that "inquiries into an employee's

psychiatric health may be permissible when they reflect concern for the

safety of employees and the 'public at large.'"  Coffman v. Indianapolis

Fire Dep't, 578 F.3d 559, 565 (7th Cir. 2009) (involving a firefighter),

citing Krocka v. City of Chicago, 203 F.3d 507, 515 (7th Cir. 2000)

(involving a police officer).

　　　In this case, however, genuine issues of material fact remain.  First,

this Court recognizes that the reports Defendant received that Plaintiff

made threats needed to be taken seriously and could have constituted a

good faith belief that Plaintiff could not perform the essential functions

of the job and that business necessity warranted an IME.  Compare

Pence v. Tenneco Auto. Operating Co., Inc., 169 Fed.App. 808, 812

(4th Cir. 2006) (finding that an employer's good faith belief that an

employee made death threats was sufficient to support the demand for an

IME, even where the employer never interviewed the plaintiff) with  Tice

v. Centre Area Transp. Auth., 247 F.3d 506, 518 (3d Cir. 2001) ("even a 'good faith' mandatory medical examination by an employer may nevertheless give rise to liability if the court determines that the examination was unwarranted").  However, in January 2007, OEIG concluded its investigation of a complaint alleging misconduct by Plaintiff and concluded that "the allegation that [Plaintiff] violated proscriptions against violence in the workplace by making threats against his supervisor is UNFOUNDED[.]"   Despite that, Defendant twice thereafter again ordered Plaintiff to undergo a psychological IME.

Whether a reasonable employer would have done so, given the evidence Defendant had, is a disputed factual issue.  Moreover, what constitutes a business necessity varies by workplace.  See Conroy , 333 F.3d at 99 (2d Cir. 2003).  In support of its Motion for Summary Judgment, Defendant cites cases in which employer-ordered psychological IME did not violate the ADA, but those cases involved a firefighter, a police officer, and an individual working in school setting.  See, e.g., Coffman, 578 F.3d 559; Krocka, 203 F.3d 507; Miller, 983 F.Supp.

1201.  While certainly workplace violence can occur anywhere, the nature of Plaintiff's job is a factor in determining whether Defendant demanded the IME because it was job-related and consistent with business necessity.  Because the record contains questions of fact, Defendant's Motion for Summary Judgment is denied.  See Jackson, 2003 WL 22127743, at *11 ("Unless the court can say no reasonable jury could resolve these issues in favor of [the plaintiff], summary judgment must be denied"); see also Brownfield, 612 F.3d at 1146 (agreeing that "prophylactic psychological examinations can sometimes satisfy the business necessity standard, particularly when the employer is engaged in dangerous work" but that "we must be keen to guard against the potential for employer abuse of such exams").


## V.  CONCLUSION

For the reasons stated, Defendant's Motion to Strike Portions of Plaintiff's Objection (d/e 68) is GRANTED, Plaintiff's Motion for Partial Summary Judgment (d/e 52) is DENIED, and Defendant's Motion for

Summary Judgment (d/e 53) is DENIED.  This case remains set for a

final pretrial conference on February 27, 2012 at 10:00 a.m.

ENTER: February 21, 2012

FOR THE COURT:

                        s/Sue E. Myerscough
                     SUE E. MYERSCOUGH
                     UNITED STATES DISTRICT JUDGE