1          IN THE UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF ILLINOIS
2               SPRINGFIELD DIVISION

3

4   MICHAEL A. SANDERS,            )
                                   )
5             PLAINTIFF,           )    09-03207
                                   )
6          VS.                     )
                                   )
7   ILLINOIS DEPARTMENT OF         )    SPRINGFIELD, ILLINOIS
    CENTRAL MANAGEMENT SERVICES,   )
8                                  )
              DEFENDANT,           )
9

10          TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE SUE MYERSCOUGH
11             U.S. DISTRICT JUDGE

12   JUNE 6, 2012

13   A P P E A R A N C E S:

14   FOR THE PLAINTIFF:          MR. KEVIN SHIELDS
                                 ATTORNEY AT LAW
15                               245 NE PERRY AVENUE
                                 PEORIA, ILLINOIS
16                                     AND
                                 MR. MICHAEL A. SANDERS
17                               APT 205
                                 400 E. JEFFERSON
18                               SPRINGFIELD, ILLINOIS

19

     FOR THE DEFENDANT:          MS. AMY PETRY ROMANO
20                               MS. KELLY R. CHOATE
                                 ILLINOIS ATTORNEY GENERAL
21                               500 S. SECOND STREET
                                 SPRINGFIELD, ILLINOIS
22

23

     COURT REPORTER:            KATHY J. SULLIVAN, CSR, RPR
24                              OFFICIAL COURT REPORTER
                                600 E. MONROE
25                              SPRINGFIELD, ILLINOIS
                                (217)492-4810

```
1                          I N D E X

2    WITNESS                   DIRECT  CROSS  REDIRECT  RECROSS
     (NONE.)
3

4

5

6

7

8

9

10

11

12                       E X H I B I T S

13
     GOVERNMENT'S EXHIBIT
14   NUMBER                    IDENTIFIED   ADMITTED

15

16

17

18

19   DEFENDANT'S EXHIBIT
     NUMBER                    IDENTIFIED   ADMITTED
20

21

22

23

24

25
```

```
1              P R O C E E D I N G S
2        *    *    *    *    *    *    *    *    *    *    *
3           THE COURT:  This is 09-CV-03207.  Sanders
4    versus Illinois Department of Central Management
5    Services.
6        We have Michael Sanders represented by
7    Mr. Shields.  I didn't expect you here in person.
8           MR. SHIELDS:  Yes, Your Honor.  Did you
9    expect me to appear by telephone?  Or not at all?
10          THE COURT:  No, by telephone.
11          MR. SHIELDS:  Yes.  Well, given my recent
12   motion, I thought it would be best to be here in
13   person, Your Honor.
14          THE COURT:  I appreciate it.  It gives me
15   an opportunity to meet you and to thank you for
16   taking this case.
17       Then I have on behalf of the Department of
18   Central Management Services both Amy Romano and
19   Kelly Choate.
20       Ms. Romano, have you re-entered your appearance
21   in this case?
22          MS. ROMANO:  No, I have not, Your Honor.
23   We're kind of on a holding pattern for me to get
24   approval to work on this case, given my new
25   employment.  But I'm here at the request of the
```

1    Attorney General's Office.

2            THE COURT:  All right.

3       And I notice Ms. McNaught is present, too.

4            MS. McNAUGHT:  Yes, Your Honor.

5            THE COURT:  Thank you for being here.

6       Let's see.  I had a motion to withdraw filed in

7    this matter.  And I continued the pre-trial

8    conference to today.

9       Mr. Sanders, Mr. Shields has indicated that you

10   have an unresolvable dispute relating to how to

11   handle the case.

12      I see that you have objected to withdrawal of

13   your legal counsel; is that correct?

14           MR. SANDERS:  Yes, Your Honor.

15           THE COURT:  Mr. Shields, how do you wish to

16   proceed?

17           MR. SHIELDS:  Your Honor, I'm, of course,

18   somewhat limited in what I can disclose to the Court

19   given attorney/client privilege.  But for what I can

20   say is for some professional considerations and some

21   fundamental disagreement as far as litigation

22   strategy and how to proceed with this case, I don't

23   see how I could represent Mr. Sanders.

24      I think over the last couple of years that this

25   case has proceeded, Mr. Sanders has developed a

1    somewhat unique litigation strategy that he feels

2    very strongly about that I don't feel that I could

3    execute for him.

4        And that -- those fundamental disagreements in

5    litigation strategy I believe have significantly

6    deteriorated our working relationship to the point

7    where, again, I don't think I can effectively

8    represent him.

9        Now, certainly I understand the Court's

10   interest in getting this case to trial.  And I

11   believe I mentioned at the prior pre-trial

12   conference, although I would prefer a full

13   withdrawal from this case, that's certainly within

14   the Court's discretion.  So if the Court would

15   prefer that I stay on as some sort of standby

16   counsel to assist him at trial, that's certainly

17   something that I would respect the Court's request

18   in that regard.

19           THE COURT:  Mr. Sanders, this puts both

20   counsel and this Court in a very difficult position.

21   The Court has done you a favor by offering you legal

22   counsel to represent you.  And of course, the Court

23   is incurring costs for that legal counsel in this

24   matter.

25       And, you know, the appointment is made with the

1    understanding that you and legal counsel agree on

2    the strategy that has to be followed at your trial.

3        So as we sit here today, you have a choice.

4    You either have an attorney; Mr. Shields; and he is

5    legal counsel, he makes decisions in the case; or

6    you can try the case yourself.

7        I can not justify incurring the cost of

8    Mr. Shields coming down here from Peoria and

9    spending time in a jury trial that may take days

10   when you don't take the advice he gives you.

11       Now, I have no idea what the disagreement is

12   about.  And I can't inquire into that.  But

13   Mr. Shields went to law school for a reason, and

14   that's to understand the law and to explain it to

15   you and to tell you what he can present as evidence

16   in this case within the bounds of the law.

17       Because he has an obligation not just to you,

18   he has an obligation to the Court not to follow

19   strategies that are not sound in the law.  And he's

20   apparently made that decision in this case, that

21   your approach is not something that he can legally

22   present to me in this courtroom or to a jury.

23       So what is your choice?

24           MR. SANDERS:  I would like to proceed with

25   counsel.  If I may add, Mr. Shields has explained

1    his -- you know, what he would like to do.  And I

2    think some of the issue that we're in contention

3    about is what the Attorney General intends to do.

4        I think a lot of this, primarily, you know,

5    would be, you know, based on the arguments that the

6    Attorney General makes.  And, you know, whatever

7    response, you know, that would come from this end.

8            THE COURT:  I'm not sure what you mean.

9        I mean certainly the evidence that's to be

10   presented in rebuttal is fluid, depending on what

11   evidence the defense presents.  And I'm sure

12   Mr. Shields, as he sits here today, doesn't know

13   exactly what it is that the government is going --

14   excuse me, that the Attorney General is going to

15   present.

16           MR. SANDERS:  Based on what they did at the

17   Civil Service Commission, the route they took, you

18   know, I think I have an idea, if they do the same

19   thing, you know, it would be the same responses.

20   And I think that Mr. Shields is not comfortable, you

21   know, I don't know, with the responses that were

22   provided to the Commission.  And, you know, I guess

23   it, you know, probably identically be the same

24   responses in here.

25       I mean, I think he wants to limit the nature of

1  the scope of the trial, but --

2      THE COURT:  Well, this Court has limited

3  the nature and the scope of this trial.  It's not

4  just Mr. Shields.

5      MR. SANDERS:  Okay.  Well, if I have a

6  choice, I would like to proceed with counsel.

7      THE COURT:  Mr. Shields, would you like to

8  talk to your client in the jury room and see whether

9  or not you're comfortable with representing

10 Mr. Sanders?

11     MR. SANDERS:  Yes, Your Honor.

12     You know, one thing I would point out,

13 without -- I don't believe I'm violating

14 attorney/client privilege here; but one of the

15 issues may be what witnesses to call, which I

16 believe is the same reason that Mr. Sanders removed

17 his prior attorney.  So in that respect, that's one

18 of the issues that I think is a fundamental

19 disagreement.

20     THE COURT:  Well, that's what I want you to

21 go talk to your client about and see whether he can

22 agree with you as to how to proceed with the case.

23 And if not, then I will grant your motion to

24 withdraw.

25     MR. SHIELDS:  Yes, Your Honor.

1          (Whereupon a break was taken.)

2               THE COURT:  Court is reconvened.

3    Mr. Shields.

4               MR. SHIELDS:  Yes, Your Honor.  My client

5    would like to proceed with legal counsel.

6               THE COURT:  And do you feel as if you can

7    continue to represent him?

8               MR. SHIELDS:  Quite honestly, Your Honor, I

9    don't; for reasons that I don't feel like I can

10   disclose right now, but --

11              THE COURT:  I understand.

12              MR. SHIELDS:  -- I don't feel like I can.

13   But if this Court requests that I remain as

14   Mr. Sanders' counsel, certainly I will do my best,

15   Your Honor.

16              THE COURT:  Ms. Choate, what is your

17   position?  If you have one?

18              MS. CHOATE:  We don't take any position on

19   whether Mr. Sanders goes forward with counsel or

20   without, except to the extent that it would cause an

21   undue delay if Mr. Sanders would want to try and

22   seek counsel, which there's already been a stay of

23   about five months for him to try and do that at one

24   point in this case.

25        But just as far as having counsel or not having

1    counsel, we have no position.

2         THE COURT:  All right.  Well, Mr. Shields,

3    I have great sympathy for your situation.  I do not

4    want you to do anything in this case in terms of

5    representing Mr. Sanders that is anything other than

6    what you feel is your ethical responsibility.

7         If you're indicating to me that you believe you

8    may be able to do that as we sit here today, I will

9    leave you in the case.  If you do not, I will grant

10   your motion to withdraw.

11        MR. SHIELDS:  Your Honor, my preference

12   would be to withdraw from the case.  That would be

13   my preference.

14        THE COURT:  All right.  I'm going to grant

15   your motion.  Reluctantly.

16        And then, Mr. Sanders, I need you to sign the

17   stipulated -- Exhibit A, uncontested facts.  And I'm

18   going to ask that you also approve the final

19   pre-trial order.

20        Christy, could you take that to him.

21        And Mr. Shields, you're free to go.

22        MR. SHIELDS:  Your Honor, it may not be

23   relevant at this point, but you may have possibly

24   alluded to it earlier.  But certainly given my

25   voluntary motion to withdrawn, I certainly would not

1  be requesting any fees or costs associated with my

2  representation of Mr. Sanders in the last few

3  months.

4      THE COURT:  Well, Mr. Shields, I appreciate

5  that.  I would still like you to submit it and I

6  hope to be able to reimburse you in some fashion.

7      MR. SHIELDS:  Thank you, Your Honor.

8      THE COURT:  Thank you very much for your

9  help.

10    So I have the following weeks --

11      MS. CHOATE:  Your Honor?

12      THE COURT:  Yes, Ms. Choate.

13      MS. CHOATE:  I have an issue with the final

14 pre-trial itself.  At some point I believe we're

15 going to have to amend to the extent the Court wants

16 us to go ahead and cite on the final pre-trial our

17 objections.  Because of the issues with

18 representation versus no representation, the final

19 pre-trial came down to the last minute to file it.

20 And I don't believe either party has had a chance to

21 go through and note their objections to each others

22 exhibits.  So we can amend it at some later time if

23 that would be all right with the Court.

24      THE COURT:  That would be fine.

25      MS. CHOATE:  Thank you.

1          THE COURT:  All right.  These are the weeks
2     we could try this matter:
3          July 10.  July 24.  July 31.  August 7.
4     August 14.  Or August 28.
5          Also, excuse me, July 5 and 6.
6          I'm sorry, Mr. Sanders.
7          MR. SANDERS:  That was July 5 and 6
8     July 10, July 21 --
9          THE COURT:  No, July 24.
10          MR. SANDERS:  And the other dates?
11          THE COURT:  July 31, August 7, August 14,
12     and August 28.
13          MR. SANDERS:  If you're asking, July 24th
14     would be good for me.
15          THE COURT:  July 24th was -- yes, it was,
16     that was one of the options.  Ms. Choate.
17          Ms. Choate, you don't have to stand up.  I
18     notice you have a crutch.
19          MS. CHOATE:  Yeah, I'm having hip
20     replacement in two weeks, and so I won't be back to
21     work until, he says six weeks; I may be back sooner.
22     But -- so I can't do any of the July dates, it would
23     have to be the August dates.  Preferably the 28th,
24     but the 14th would be a second choice.
25          THE COURT:  Ms. Choate, are you comfortable

1  that by August 28th you'll be fine and --

2          MS. CHOATE:  Yes.  I had my other hip

3  replaced and was back in three weeks.  However,

4  there's a driving issue since this is my right leg,

5  so that's why it's the six weeks this time.  I am

6  comfortable I would be back in August.  And we would

7  need time to prep all of our witnesses, which we

8  started when we were going to try this before, but

9  we'll probably need to still touch base with them.

10     So, yeah, either -- the 28th would be my first

11  preference, to build in some breathing room.

12          THE COURT:  Mr. Sanders, is August 28th

13  acceptable?

14          MR. SANDERS:  That causes some issues for

15  me.  I'm -- you say that you can not take any July

16  date at all?

17          MS. CHOATE:  That's correct.

18          MR. SANDERS:  I don't know if you are

19  asking for my agreement, but you know, I would

20  prefer July and she wants --

21          THE COURT:  Well, she's just given a very

22  good reason why she can not do it in July.  And I'm

23  not going to set it in July.  I can't expect someone

24  who's just had hip surgery to sit through a trial.

25  And she can't even drive herself here to the

1  courthouse.

2          MR. SANDERS:  Yes, ma'am.

3      August 28th, I guess that would be the date.

4          THE COURT:  All right.  So we're set for

5  jury trial.  How many days do we think this will

6  take?  I don't remember from the last.

7          MR. SANDERS:  I believe we originally

8  agreed four days, but the final pre-trial order, I

9  believe that got reduced to three.  And I would say

10  three to four days, somewhere in that range.

11          THE COURT:  All right.  And do we have any

12  idea whether Dr. Killian will be available that

13  week?

14          MS. CHOATE:  I don't know.  We're not

15  calling Dr. Killian, so we haven't been checking.

16      Another thing, Your Honor, I don't know, Amy

17  and I talked about this, if we can get this done in

18  four days, even bifurcating liability verses

19  damages.  There's a huge number of witnesses on both

20  sides, even taking out our damages witnesses.

21      So I would be -- it would be pushing it to get

22  it done in four days, I believe.

23          MR. SANDERS:  I think that we had discussed

24  earlier as far as the witness list, I believe

25  Ms. Romano was the lead counsel then, but I don't

1    intend to call everyone that is on the witness list.

2    You know, I only want them available because I don't

3    know what the direction that the Attorney General is

4    going to take.  It is not my intention to actually

5    question all these people.

6              THE COURT:  Well, why don't we do this; Ms.

7    Choate, can I have an agreement between you and

8    Mr. Sanders that the witnesses will be available

9    that he designates he's going to call, but that the

10   others could be on-call and available by -- to be

11   reached by telephone to be told if they're needed?

12             MS. CHOATE:  We can't guarantee the

13   availability of witnesses that no longer work for

14   the department.

15             THE COURT:  I agree.

16             MS. CHOATE:  But certainly we could do our

17   best to have the other witnesses that work for the

18   State that we can control available at least by

19   phone so they could be on call.

20             THE COURT:  Okay.  So Mr. Sanders, can you

21   designate which of those witnesses you definitely

22   will be calling?

23             MR. SANDERS:  I will definitely be calling

24   Victor Puckett.  I will definitely be calling

25   Deborah Cowan.  I will definitely be calling

1    Veronica Tozer.  I will definitely be calling Jeff

2    Shuck.

3        There are quite a few people on the list that

4    are not -- that are no longer employed by the State.

5            THE COURT:  Just go through those that you

6    know or you think still are employed by the State

7    and you intend to call.

8            MR. SANDERS:  Okay.  Erin Davis.

9        Would also like for Dr. Terry Killian to

10   testify.  Well, he's not employed by -- everyone

11   else I've listed is employed by the State.

12       Susan Twitchell, I would definitely be calling

13   her.

14       And this is for the liability portion of the

15   trial.  And everyone that I just listed is employed

16   by the State except for Dr. Terry Killian.  And

17   again, those people are strictly for the liability

18   part of the trial.

19           THE COURT:  Okay.  And then you understand

20   you have to subpoena Dr. Killian independently.  So

21   you'll have to contact his office and make sure he

22   will be available and have a subpoena served on him.

23           MR. SANDERS:  Okay.  I will see if I can

24   take out a loan and have a subpoena issued.

25           MS. CHOATE:  Your Honor, regarding Susan

1   Twitchell.  Ms. Romano has reminded me that she no

2   longer works for the State -- or for CMS.  And that

3   the Court has already determined at a previous

4   hearing that it would not -- you would not subpoena

5   her, as she wasn't a relevant witness.  She's

6   already been discussed.

7          MR. SANDERS:  I was not present for that

8   hearing.  Susan Twitchell, she was never employed by

9   CMS.  She's employed by the Department of Human

10  Services.  The reason that she is relevant is

11  because she holds the position -- she is, you know,

12  what I'll call programmer/analyst, and she reviewed

13  some of my work.

14      I had received an e-mail from my supervisor

15  telling me that I had incorrectly did my job.  The

16  e-mail was forwarded to Susan Twitchell because she

17  was the assigned programmer analyst.  Ms. Twitchell

18  reviewed my work and Ms. Twitchell says in her

19  e-mail response, she said that everything you did

20  was perfectly fine.

21      And I want to call her in because basically,

22  you know, her skill set, you know, in this work

23  area, is greater than mine and it's greater than

24  Victor Puckett's.  And she did review my work.  And

25  you know, on one hand I have this e-mail saying that

1    what Victor says that everything was done

2    incorrectly.  And Ms. Twitchell reviewed it and

3    Ms. Twitchell said there was -- there was no problem

4    with anything.

5           THE COURT:  Ms. Choate, your response.

6           MS. CHOATE:  To the extent that she may

7    have reviewed his work at some point, the issue here

8    is what CMS believed about Mr. Sanders' work and

9    about his activities at work.  And we don't believe

10   that she's relevant to the issue before the Court on

11   the ADA claim.

12          THE COURT:  What is the possibility that,

13   Mr. Sanders, we could stipulate to her review of

14   your work and have that read to the jury?

15          MR. SANDERS:  If Susan Twitchell will

16   stipulate?

17          THE COURT:  No.  If you will stipulate that

18   Susan Twitchell, that her review of your work be

19   read to the jury?

20          MR. SANDERS:  I intend to submit the

21   e-mail.

22          THE COURT:  I'm saying in lieu of calling

23   Ms. Twitchell, what we could do is read her analysis

24   of your work to the jury.

25          MR. SANDERS:  Yes, I intend to do that.

1          THE COURT:  I mean to say without calling

2    Ms. Twitchell.

3          MR. SANDERS:  Oh.

4          THE COURT:  I mean these types of things

5    are stipulated to all the time.  It's an attempt to,

6    you know, accommodate the time the trial takes,

7    accommodate the jury, make your job easier.

8          MR. SANDERS:  Well, I -- you know, it was

9    my intention to read her e-mail, but I mean if -- I

10   don't believe her testimony is going to be, you

11   know, very extensive.  I don't think she's going to

12   be on the witness stand for very long.

13       But since she's the one that reviewed it and

14   she wrote an e-mail response indicating that --

15   that, you know, what I did was not problematic and

16   everything was fine, I mean I'd just as soon, you

17   know, give her an opportunity to explain, you know,

18   what her e-mail was about.

19          THE COURT:  Do you have the e-mail,

20   Ms. Choate?

21          MS. CHOATE:  I'm sure we do somewhere.  I

22   don't have it with me.

23       Your Honor, to the extent that -- rather than

24   stipulating to an e-mail where she just says

25   everything's fine; if the Court is determining -- or

1  determines that her testimony would be relevant, we

2  would prefer to have her testify so we can figure

3  out exactly what she looked at and what her

4  qualifications were to review. So, yeah.

5          THE COURT: All right.

6          MS. CHOATE: We'd be okay with her being

7  here, instead of stipulating.

8          THE COURT: All right. So that's 1, 2, 3,

9  4, 5, 6, 7 witnesses.

10          MR. SANDERS: The other -- you know, the

11  other people I don't believe that the majority of

12  the other people -- you know, I'm going off the

13  plaintiff's witness list.

14      The majority of these people are not employed

15  by the State of Illinois. The remaining ones.

16  Except for Mike Berk, but he's with IDAS. And I

17  believe that you stated that you did not want Mike

18  Berk. Or you ordered that, you know, he wouldn't

19  be -- he would be for liability purposes anyway, not

20  for trial purposes.

21          THE COURT: All right. Then the Attorney

22  General then have available for the liability

23  portion those witnesses. And the other witnesses

24  can simply be available by phone for contact in the

25  event that Mr. Sanders needs them. Those who work

1    for the State.

2         MS. CHOATE:  Those who work for the State,

3    we can.

4         Regarding Mike Berk.  I believe he was the

5    subject of one of our motions in limine.  And he

6    works for the Department of Employment Security.

7    And he would be unable to testify.  Statutory

8    prohibition for that testimony.  Plus it would not

9    be relevant.

10        THE COURT:  Is he with the Inspector

11   General?

12        MS. McNAUGHT:  No.  He's with the

13   Department of Employment Security.  And there's a

14   statute that says that evidence that's taken in an

15   Employment Security hearing can't be used as

16   evidence in any other kind of -- sum and substance

17   is it can't be used for purposes of establishing

18   evidence in any other court proceeding.

19        THE COURT:  And that is the purpose for

20   which Mr. Sanders is calling him?

21        MR. McNAUGHT:  That's our understanding.

22        MR. SANDERS:  No.  I was interested in

23   calling Mr. Berk for the liability part of the case.

24   Mr. Berk has nothing to do with what CMS -- with

25   these IMEs or CMSs discharge.

1      Mike Berk, I believe, on two different

2  occasions, has violated Department of Employment

3  Security, at least their internal adjudications.  He

4  has -- he has unilaterally reversed the

5  determinations of the agency, you know, with respect

6  to my 2005 discharge and with respect to the 2007

7  discharge.  I believe that he illegally halted my

8  unemployment.

9      Then he -- again, it's only for liability

10  purposes.  I'm not interested in him for the

11  purposes, you know, of a trial.

12          THE COURT:  Ms. McNaught, it sounds to me

13  like he is calling him for purposes that are not

14  admissible under the statute, but as I'm sitting

15  here I don't have the statute in front of me.

16          MS. McNAUGHT:  Well, I guess I don't

17  understand what Mr. Sanders is saying when he says

18  he doesn't want him for trial, but he does want him

19  for liability purposes.  I mean he has to establish

20  liability at trial, so I think he is a trial

21  witness.  So --

22      I really don't understand what it is that he's

23  saying.  But this case isn't about whether the

24  Department of Employment Security did something

25  wrong or an employee of the Department of Employment

1    Security did something wrong.  The issue as I

2    understand it is an ADA violation by the Department

3    of Central Management Services.

4              THE COURT:  That's correct.  So Mr. Berk

5    will not be called.  Nor will he be available by

6    telephone, unless some other relevant issue arises.

7         So then how many of your defendant witnesses do

8    you expect you'll call in the liability phase?

9              MS. CHOATE:  Your Honor, we have 11

10   witnesses.  And of course, it all depends on what

11   plaintiff's case is.  But including Mr. Sanders,

12   that are 11 witnesses for liability.  The ones who

13   are marked with an asterisk are for damages, which

14   would only be called in the event that liability has

15   been established.

16             THE COURT:  Okay.

17        All right, so 11 witnesses.  Some of those are

18   duplicates from Mr. Sanders' list?

19             MS. CHOATE:  That's correct.  And it may

20   very well shorten any testimony we have in our case

21   in chief for those.  Or eliminate some for that

22   matter.  We don't know what he will get out during

23   his case.

24             MR. SANDERS:  It's my understanding that

25   you will definitely call all 11?

1          MS. CHOATE:  No.  It will depend for the
2     defendants how the trial goes and what evidence
3     Mr. Sanders puts on that determines who we will
4     call.
5          THE COURT:  Okay.  So, we're talking
6     roughly 15 witnesses definitely for the liability
7     phase.  So that will definitely take three to four
8     days.  All right.
9       Then we still have issues reserved on the
10    motions in limine.  I reviewed the privilege log
11    that was presented and I'm going to deny -- or grant
12    the motion in limine as to that issue.
13         MR. SANDERS:  Okay.  Your Honor, I was not
14    privy to the motion in limine.  I believe that may
15    have been done by Mr. Shields, and I did not receive
16    a copy of it.
17         MS. CHOATE:  Your Honor, this was the case,
18    if you recall, where Mr. Sanders was here and we
19    discussed the issue of surveillance.
20         THE COURT:  I remember.  So, the motion is
21    granted.
22       As to Paragraph 2, the findings and rulings of
23    the Illinois Civil Service Commission and the ALJ,
24    I'm going to grant the motion as to that.
25       And the investigation by the Office of the

1  Executive Inspector General, I'm going to grant the

2  motion as to that.

3      And Paragraphs 7, 8, 9, and 10, evidence

4  pertaining to damages including attorney fees for

5  counsel who have not entered their appearances, back

6  pay, undisclosed damages, and damages for alleged

7  personal injuries.

8      One aspect of that undisclosed damages was a

9  request for punitive damages.  I'm granting the

10  motion as to punitive damages because they're not

11  recoverable from a state agency.

12      I can't imagine what attorney fees for counsel

13  who have not entered their appearance would be.

14  Would that have been in the collateral matters, Ms.

15  Choate, do you know?

16          MS. CHOATE:  I believe it was he's seeking

17  attorney fees for Mr. Baker.

18          MR. SANDERS:  No.  That will be --

19          MS. CHOATE:  For the Civil Service

20  Commission issue.

21          THE COURT:  The collateral issues.  I will

22  deny that -- I mean I grant those motions as to

23  those attorneys fees.

24      Back pay, you've already conceded has been

25  awarded; correct?

1          MS. CHOATE:  Correct.

2          THE COURT:  So it's granted as to that.

3    Undisclosed damages, it's granted as to that.

4        Personal injuries.  I'm not sure what those

5    personal injuries would be, Mr. Sanders.  Are you

6    talking about emotional damages?

7          MR. SANDERS:  Yes, I am.  And I'm also, you

8    know, part of the damages that I have in this case

9    is because of the fact of what CMS did, I am

10   currently without a pension after 18 years of

11   employment with the State.

12       And the motion in limine that you have, I don't

13   believe that I have ever received a copy of it.  I

14   don't have a record of that.  It went to

15   Mr. Shields, so you know --

16         THE COURT:  I'm not sure Mr. Shields was in

17   the case when that was filed.

18         MS. CHOATE:  I don't think he was in the

19   case.

20         THE COURT:  We had a hearing on that matter

21   and you had it at the hearing.  We went through it.

22   And I reserved ruling on those issues.

23         MR. SANDERS:  I believe that he said there

24   was a motion in limine filed and he said that he had

25   issued a response to the motion in limine, but --

1          THE COURT:  Well, at any rate, personal

2     injuries I will leave in at this time, pending any

3     evidence, I guess, if there is evidence presented,

4     as to injuries that may be related and recoverable.

5       All right.  Jury instructions may need to be

6     revised, Ms. Choate.

7          MS. CHOATE:  I'm sorry, Your Honor?

8          THE COURT:  Jury instructions, will they

9     need to be revised?

10          MS. CHOATE:  I don't believe so.  Unless

11     there's -- I know that Mr. Sanders wanted to raise

12     an issue about doctor/patient confidentiality.  We

13     don't believe that's an issue before the Court with

14     the ADA since he didn't see Dr. Killian.  But should

15     that issue stay in and go to the jury, that might be

16     another instruction we might want to proffer.  But

17     other than that, no.

18          THE COURT:  I'm not sure how that would

19     come in either, but in the event it does, I'll have

20     you give us another jury instruction.

21          MS. CHOATE:  Thank you.

22          THE COURT:  Okay.  Is there anything else

23     outstanding I can take care of?

24          MS. CHOATE:  Not for us, Your Honor.

25          THE COURT:  Mr. Sanders?

1     MR. SANDERS:  Okay, you have a date set for

2  August 28th.  And my understanding is that I'm to

3  get a subpoena for Dr. Killian.

4     No.  I'm not quite certain exactly what's in

5  the motion in limine, but I'll get a copy from the

6  Clerk's Office.

7     THE COURT:  All right.  We'll start at nine

8  in the morning, we'll go from nine to noon.  Break,

9  and then reconvene at 1:30, and go to 4:30 or five.

10  And hope to complete the case that week -- certainly

11  at least the liability phase within that week.

12     In the event we need to go into September, we

13  have Labor Day and then, Christy, what's that

14  Tuesday look like after Labor Day, the 3rd?

15     Excuse me, the 4th?  Wait.  That's Labor Day in

16  Canada.  What would the 3rd and 4th be like in

17  September?

18     THE CLERK:  Well, the 4rd we would be off,

19  that's the holiday.

20     THE COURT:  That's our Labor Day?

21     THE CLERK:  Yes.  It's a holiday for us.

22     THE COURT:  So the 4th?

23     THE CLERK:  4th.  You already have some

24  hearings in the morning, revocation hearings.

25     THE COURT:  How about the afternoon?

1          THE CLERK:  You don't have anything.

2          THE COURT:  All right.  So we may have to

3    reconvene in the afternoon of the 4th for damages,

4    depending on how this proceeds.

5          And Mr. Sanders, I'm not going to educate you

6    as to how to try a case.  You're expected to be held

7    to the same standards as that of the lawyers.  So

8    you're going to have to make your opening statement.

9    It's not an argument, it's an opening statement of

10   the evidence you expect to present.  And if you

11   start arguing during your opening statement, and an

12   objection is made because you're arguing, I will

13   have to sustain that objection.  So make sure and

14   make an opening statement that simply summarizes the

15   evidence you expect to present.

16         And then following that you'll be expected to

17   call your witnesses.  To have them here stacked up

18   in the hallway ready to be called when you call

19   them.  Because we will not be taking breaks

20   throughout the course of this case.  And I expect

21   you to be prepared, your witnesses to be served with

22   their subpoenas and their fees ahead of time, so

23   that they're here waiting to testify.

24         Now, if you want to talk to counsel about

25   scheduling witnesses or timing the witnesses ahead

1    of time, I would recommend you do so.  And give them

2    the order in which you will call these witnesses so

3    the witnesses can be here at the time you expect to

4    call them.  And so that the Attorney General's

5    Office can facilitate getting them here in a timely

6    fashion.  But ultimately the obligation is on you.

7    Do you understand that?

8         MR. SANDERS:  Yes, ma'am.  Just one issue.

9    And when I was giving you the list of witness,

10   Ms. Choate made a comment that the people that are

11   on state payroll that they would assure would be

12   here and the only person I would actually have to

13   subpoena is Dr. Killian.

14      So insofar as the witnesses I've listed, am I

15   to understand that the Attorney General -- they will

16   be made present by the State without subpoena

17   because they're on state payroll?  Am I to

18   understand that?

19        MS. CHOATE:  For those that he's

20   indicating, as long as they are working for the

21   State and we have an order that you wish to call

22   them in, we would have them available.

23        THE COURT:  All right.

24        MR. SANDERS:  There would be -- am I

25   understanding that I'm not obligated to pay them a

1    fee or mileage or anything?

2            THE COURT:  I'm sorry, I can't hear you.

3            MR. SANDERS:  Am I understanding that I'm

4    not obligated to pay them a fee or mileage or

5    anything of that nature?

6            THE COURT:  That's correct.  If they are

7    currently under State employment and on your list.

8    All right?

9            MR. SANDERS:  Yes.  That's what I'm asking.

10            THE COURT:  Yes.

11            MR. SANDERS:  All right.

12            THE COURT:  Anything further?

13            MS. CHOATE:  I don't believe so.

14            MS. McNAUGHT:  Your Honor, just so that

15    we're clear, if an employee is not going to be a

16    state employee, if they are retired or something

17    like that, before the trial starts, we'll let

18    Mr. Sanders know that they're not an employee under

19    our direction and control.

20            THE COURT:  And if he needs to subpoena

21    them, their addresses will be made known under seal

22    here at the courthouse and the Marshals only will be

23    given those addresses personally to deliver the

24    subpoena.

25            MS. McNAUGHT:  Thank you, Your Honor.

1          THE COURT:  Okay.  Thank you.  Court is

2    adjourned.

3          (Whereupon court was recessed in this case.)

4

5

6    I, KATHY J. SULLIVAN, CSR, RPR, Official Court

7    Reporter, certify that the foregoing is a correct

8    transcript from the record of proceedings in the

9    above-entitled matter.

10

11

12

13

14                    This transcripts contains the

15                    digital signature of:

16

17                    Kathy J. Sullivan, CSR, RPR

18                    License #084-002768

19

20

21

22

23

24

25